**MILFORD TRUST COMPANY, Trustee of the Estate of Louder N. Hearn, Deceased, Plaintiff,**

v.

**W. Laird STABLER, Jr., Attorney General of the State of Delaware, Defendant.**

Court of Chancery of Delaware,
Kent County.

Jan. 16, 1973.

Henry Ridgely, Dover, for plaintiff.

Mason E. Turner, Jr., Deputy Atty. Gen., State of Delaware, for defendant.

DUFFY, Chancellor:

In this action plaintiff seeks instructions as to how it should administer the so-called Hearn Educational Trust Fund. Briefly stated, the issue is whether the Trustee should continue to select only "white" boys and girls as recipients of grants from the Fund.

The Attorney General was named as defendant and has taken the position that the Court should instruct the Trustee to give equal consideration to both white and non-Court, counsel for plaintiff filed a memo-context.

## A.

Mr. Hearn died on December 13, 1937. In his will he created a life estate for his mother and then directed that the entire residuary estate be divided into two trust funds, each of which was designed for charitable purposes. One of those is the Educational Trust. The Trustee is instructed to use income in "helping and assisting the worthy and deserving white boys and girls of this vicinity in securing an education." When he died Mr. Hearn was a resident of Milford which at that time maintained racially-segregated school districts and, indeed, did not provide any opportunity for black students to attend school beyond Grade 9. After 1937 justice and law joined and black students now constitute about 27% of all students in Grades 9–12 in the Milford Public School District; they make up about 30% of the students in all schools of the District.

## B.

■ By now the law against discrimination is settled beyond argument; the State may not discriminate in any way against any person on the basis of race or color and State officers and agents who exercise its powers are bound by the same limitation. A judge is such an officer and he may not take any judicial action based upon racial discrimination. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); State v. Brown, Del.Supr., 195 A.2d 379 (1963). Thus this Court may not instruct a trustee to honor racial restrictions in a trust instrument, In re Will of Potter, Del.Ch., 275 A.2d 574 (1970); Bank of Delaware v. Buckson, Del.Ch., 255 A.2d 710 (1969). However, a trust with racial restrictions but which is entirely private and which does not involve, in any way, action by the State or its agents is constitutional, In re Will of Potter, supra, and Bank of Delaware v. Buckson, supra, but for the reasons I have indicated, this Court could not enforce the racial clause.

## C.

■ In relating these principles to this case the threshold question is whether "State action" is involved in the administration of the Hearn Educational Trust. Initially, this is a fact question and so the Court must look to the record which the parties have made. It shows plainly that over a period of many years the administration of the Trust has been intimately involved with the Public School District of the Milford area and the State educational system. An affidavit filed by the Trustee states:

"That since 1939 and up to January 1972 there have been 970 grants made by the trustee under this educational trust fund to assist male and female graduates of the Milford High School in furthering their education. The scholarship awards are determined by a Committee of Selection upon student applications received and accompanied by forms completed by the local high school authority showing grades and aptitude ratings by the local teachers. The school system, through its teachers and principals in the Milford school district supplement information given by the applicant. Such supplement is in the nature of background information relating to character and accomplishments undertaken and made during the high school years. Prior to 1953 Dr. Henry Allen Moe of the Guggenheim Foundation and John E. Abbott of the Museum of Modern Arts served as the Committee of Selection. From 1953 to date the Committee of Selection has consisted of Dr. John E. Hocutt of the University of Delaware, Robert E. Shilling, a former principal of the Milford High School and Caesar Rodney, now deceased, Miss Lena S. Short, a retired teacher and librarian, and Willard H. Hickman, Principal of the Milford Senior High School."

The Selection Committee receives all applications through the District and bases its decisions on them as supplemented by qualitative and quantitative information supplied by the District through its principals and teachers; thus all applications are received from the "local high school authority" which also completes forms showing "grades and aptitude ratings by the local teachers." In addition to this regular and routine processing of data for the Trust by the State agency, the Selection Committee itself for at least fifteen years has consisted of persons who hold or who have held positions in State educational administration or teaching. Certainly, a reasonable inference from this history is that Committee members are selected because of their involvement with the State educational system. And any attempt to separate the personal or private aspect of Committee "knowledge" from the official position of the members of the school system would be artificial, at best.

I conclude that the formal participation of the Milford School District in the operation of the Hearn Trust is a significant involvement in the administration which, in combination with the service of public officers as the Selection Committee, amounts to State action for present purposes.

█ The Trustee contends that State participation in the selection process occurred because of an exercise of discretion by the Trustee and not because of an express provision in the trust instrument; therefore, says the Trustee, State action is not involved. It is true, of course, that many Federal and Delaware cases invalidating racial covenants involved express provisions for State participation in administration of the trust. See, for example, Commonwealth of Pennsylvania v. Board of Directors of City Trusts of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) and Bank of Delaware

v. Buckson, supra. But State action quite clearly cannot be measured entirely by what is said in the governing instrument. If it were, a document could be used as a shield to insulate action from judicial inquiry. And that is not the law. On the contrary, apart from what an instrument may say, actual State participation is an independent test of constitutionality. Thus, in Griffin v. Maryland, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964), the Supreme Court said that the Girard College case

" . . . must be taken to establish that to the extent that the State undertakes an obligation to enforce a private policy of racial segregation, the State is charged with racial discrimination and violates the Fourteenth Amendment."

And in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed. 2d 45 (1961) the Court, quoting from Cooper v. Aaron, said that State responsibility is found whenever there is "state participation through any arrangement, [or] management."

I conclude that the law looks not only to the formal documents creating or structuring the trust or other entity but also to the way in which its affairs are actually conducted. State action is just as significant in the latter as in the former and any discrimination therein based on race is equally unlawful.*

D.

█ I turn now to the question of what instructions should be given to the Trustee. The State argues that it should be directed to accept applications without regard to race, while the Trustee says the Court should not intervene in the administration.

The power of this Court in this situation is discussed in Bank of Delaware v. Buckson, supra, and there is no need to repeat

---

* I should also note that under 12 Del.C. § 3521 and Chancery Rule 114, Del.C. Ann., the accounts of the Trustee are subject to regular audit by this Court which also calls for State action.

what is said there. I conclude that the facts here require the Court to apply the principle of deviation in giving its instructions to the Trustee.

While the evidence is limited, it shows beyond doubt that Mr. Hearn had a general intent to benefit the community. Thus after providing for his mother during her lifetime he gave *all* of his estate (in a short, simple will) to the Trustee for (a) The Milford Emergency Hospital Fund and (b) The Educational Trust Fund. More than that he could not give. He gave all that he had for these public purposes, and the gifts were without limitation except for the single color clause to which I have referred. And as to this, the circumstances affecting educational opportunities have changed substantially in the Milford area since Mr. Hearn died in 1937. And certainly all of this could not have been anticipated by him.

It seems to me that if deviation is not ordered, Mr. Hearn's purpose will be defeated. In saying this I note that he gave to the Hospital Fund without racial restriction of any kind and that there was no such restriction applicable to the Emergency aspect of the Hospital operation in Mr. Hearn's day. In other words, where there was not a community distinction based on race, Mr. Hearn imposed none. In my view, his giving reflects a strong intent to benefit the Milford community generally. And that same approach which is now legally possible (and necessary) should be taken by the Court in dealing with the Educational Fund.

Accordingly, the Trustee will be instructed to accept and consider applications without regard to race. Compare Bank of Delaware v. Buckson, supra.

Order on notice.