Marilyn SHAPIRO, Plaintiff-Appellant,

v.

COLUMBIA UNION NATIONAL BANK AND TRUST COMPANY et al., Defendants-Respondents.

No. 60561.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

Rehearing Denied Feb. 13, 1979.

---

**28.** The court gave withdrawal instructions on these matters.

Ann Mesle Whittier, Steven J. Borel, Kansas City, for plaintiff-appellant.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, Guy A. Magruder, Jr., Kansas City, Jackson A. Wright, Columbia, Maurice O'Sullivan, Kansas City, for defendants-respondents.

PER CURIAM.

## I.

This case is one of first impression in Missouri. It involves the administration of a private trust to provide scholarship funds for the benefit of "deserving Kansas City Missouri boys" to attend the University of Kansas City at the time of establishment of the trust a private university. After the establishment of the trust and subsequent to the settlor's death, the University became part of the University of Missouri. The trust excludes women.

The issue confronting us is whether the University is so entwined with the administration of the trust so as to rise to the level of "state action" thus constituting discrimination against women.

We hold under the unique circumstances of this case that by sifting all the facts and circumstances there is not significant "state action" involved so as to be violative of the Equal Protection clause of the Fourteenth Amendment or of the Civil Rights Act, 42 U.S.C.A., § 1983 and hence affirm the judgment of the trial court dismissing plaintiff's second amended petition. As to V., infra, we adopt portions of the opinion of Shangler, J., of the Kansas City District without quotation marks.

## II.

This case involves an appeal from an order of the circuit court dismissing the second amended petition brought in two counts by plaintiff, Marilyn Shapiro, who was a law student at the University of Missouri at Kansas City. The second amended petition was filed by Ms. Shapiro against a number of defendants including Columbia Union National Bank and Trust Company (Trustee), the Board of Curators of the University of Missouri and the Attorney General alleging that she was denied the opportunity to apply for and be considered for financial aid from the charitable trust established by Mr. Victor Wilson to assist resident Kansas City "boys" who possess unusual ability or talent and who are financially unable to obtain a university education. Count I sought money damages for the loss of financial aid from the scholarship fund and Count II prayed the court to declare the exclusion of women from the benefits of the fund to be unconstitutional and to relieve the illegality by the application of the doctrine of cy pres.

█ The trial court dismissed the second amended petition for failure to state a claim. Plaintiff appealed to the Court of Appeals, Kansas City District which reversed and reinstated the petition as to all defendants except the Board of Curators of the University. We granted applications to transfer. We now decide the case as an original appeal pursuant to the provisions of Art. V, § 10, Mo.Const., and Rule 83.03. Our review of the dismissal of the petition allows the pleading its broadest intendment, we treat all facts alleged as true, construe the allegations favorably to the plaintiff and determine whether the averments invoke principles of substantive law. *Sisters of St. Mary's v. Campbell*, 511 S.W.2d 141, 145 (Mo.App.1974).

## III.

On February 2, 1948, Mr. Victor Wilson, a wealthy unmarried man, made his last will and testament. Insofar as pertinent, Mr. Wilson's will provided in Article VIII:

"I give, devise and bequeath all the rest, residue and remainder of my property and estate of every kind and character, personal and mixed . . . belonging to me at the time of my death, . . . to Union National Bank of Kansas City, Missouri, its successor [1] or successors, as Trustee. The Trustee shall have the sole legal and equitable title to all the property held by it in trust and shall have power to invest, reinvest, manage and control all the property to the best of its ability . . . .. *This trust fund is intended to be a Charitable Educational Fund for deserving Kansas City, Missouri*

1. On or about December 10, 1969, by judicial decree the defendant Columbia Union National

and Trust Company was named successor trustee.

*boys to acquire a desired education in either Yale University [2] or the University of Kansas City, Missouri, and not as a benefit fund for either of the said universities.* The Trustee shall be compensated for its services in accordance with its regular schedule of fees and after deducting the said Trustee fees and other necessary expenses incurred in the management of the Trust Fund, shall *use all of the rest of the net income derived from the property of the Trust Fund to assist one or more boys at the same time living in Kansas City, Missouri, who possess unusual ability or talent and who is financially unable to obtain a university education to attend Yale University or the University of Kansas City, Missouri, whichever is requested by the applicant. Such students shall be selected by judges appointed by the Yale Alumni of Kansas City, Missouri, and the University of Kansas City, Missouri, and approved by the Trustee of said Fund. The Trustees shall discontinue supporting any student failing to make satisfactory grades while attending either of said Universities . . . .*" (Emphasis added.)

A few days after making his will, on February 25, 1948, Mr. Wilson died. The will was admitted to probate March 29, 1948.

The market value of the assets comprising the principal of the Victor Wilson trust exceeded $4,000,000, and over 200 boys each year were given funds, many over $1,000.00 each for several years between 1970 and 1974.

Plaintiff-appellant, Marilyn Shapiro, first filed an original and then a first amended petition in one count. After the first amended petition was filed, the plaintiff forwarded a number of interrogatories to the Bank and to the Board of Curators. The Board's answers showed certain additional facts.

After the answers to the interrogatories were filed, the trustee and the Attorney General moved to dismiss. The trial court sustained the motions and the first amended petition was dismissed for failure to state a claim.[3] In its memorandum, the court noted that the trust instrument was amended by court order to substitute the University of Missouri at Kansas City. The trial court's memorandum concluded that "Mr. Wilson had a right to limit his charity to males. He did so. And it is clear that the court does not have the power or the right to arbitrarily thwart his intentions."

Plaintiff then filed a second amended petition on September 25, 1974. This petition is the subject of this controversy. The second amended petition was in two counts. The petition named as defendants the Columbia Union Bank, the President of the University of Missouri, the chancellor of the University of Missouri at Kansas City, the Board of Curators, two beneficiaries of the will and insofar as the second count is concerned the Attorney General.

Count I of the second amended petition after certain preliminary and formal matters alleged that (1) the Victor Wilson Trust is a "public charitable trust" which provides funds for a scholarship generally known as the "Victor Wilson Scholarship", (2) that in July, 1964, by order of the court the "University of Kansas City" when used in the Trust is to mean the "University of Missouri at Kansas City" with respect to the use of funds,—"[t]hus, income from the principal of the Victor Wilson Trust is so used to

---

**2.** Yale University was not originally joined as a party but was allowed to intervene. After the decision of the trial court, Yale appealed to the Court of Appeals but later withdrew its appeal.

**3.** The trial court stated in its memorandum that while the language in the petition is not clear, she is alleging that the language of the trust instrument provides that females shall be beneficiaries of the trust but if the court should find the will excluding women to be illegal that it should save the trust and invoke equitable

powers to change "boys" to "students". The court stated that the language of the trust makes it clear that the beneficiaries are to be boys. There is no state action sufficient to render the administration of the trust illegal. Even though the trust refers to the "selection" of recipients by the University of Kansas City, it is clear that this is intended to be only a preliminary screening process and that the boys must be approved by the trustee.

provide financial assistance to 'individuals' who live in Kansas City, . . . ", (3) that Article VIII of the trust provides funds to assist "one or more boys" "who possess unusual ability or talent" and who are financially unable to obtain a University education and that such students shall be "selected" by judges appointed by alumni of the University of Kansas City and "approved" by the trustee, (4) that the Curators, President and Chancellor "have developed and continue to maintain with the support and acquiescence of the . . . Bank, a process and procedure through which women, including Plaintiff, are systematically screened out and excluded from consideration and approval" by the bank from the Victor Wilson Scholarship "solely on the basis of sex," (5) on April 1, 1972, plaintiff applied for financial assistance from the Trust from the Financial Aid Office at the University of Missouri and was informed that under the present system the Victor Wilson Scholarship is for men only so that she was denied assistance from the scholarship fund for the "sole reason" she is a woman; (6) that on April 1, 1972, she was a full-time student at the University of Missouri and was otherwise fully qualified to apply for and receive benefits from the scholarship, (7) denial to plaintiff of the opportunity to "apply for, be considered for, and be approved for financial aid" from the scholarship by the President of the University, the chancellor and the Board and their agents—all agents of the State is done under "color of and by virtue of state law" and constitutes action by the state within the terms of the Fourteenth Amendment, (8) the refusal to permit plaintiff to apply for and be considered for, and approved for financial aid is a denial of her rights guaranteed under the Federal and State Constitutions[4] and by 42 U.S.C.A. § 1983 because she has been denied equal protection under the law and the privileges and immunities guaranteed to all citizens.

In Count I she prayed for $3,900.00 damages because she was forced to seek part-time employment. She also sought attorneys fees and costs.

In Count II, adding the Attorney General and the sole surviving heirs of Mr. Wilson as parties, she prayed that the "defendant's" [UMKC?] policy, custom, usage and practice" of denying her the right to apply for and recover benefits under the will solely on account of her sex is a denial of equal protection. She prayed the court to apply the doctrine of cy pres and requested the court to construe the will by substituting the word "students" or "individuals" for the word "boys".

The trustee, Bank, the Board of Curators and the Attorney General moved to dismiss. They also filed answers. They alleged that (1) the will creates a charitable trust to provide funds to assist "boys", (2) there is no state action and that plaintiff failed to state sufficient facts, (3) § 1983 does not provide a civil claim for damages, (4) that a § 1983 action is not cognizable in a state court, (5) any action of the Board has not been motivated by any intention to discriminate on the basis of sex but due to a duty to the donor, (6) plaintiff failed to allege an actual controversy and (7) that state and public officials are immune from damages under § 1983.

On August 6, 1975, the trial court entered its judgment dismissing the plaintiff's second amended petition with prejudice "for the reasons asserted in the motions of the various defendants, and for the reasons stated by the court when it dismissed the first amended petition of each plaintiff."

### IV.

On appeal, Ms. Shapiro makes several points. She contends that the trial court erred in dismissing her second amended petition for failure to state a claim because (1) "the evidence under the petition would demonstrate 'state action' and therefore a violation of appellant's constitutional rights" in that (a) the scholarship is "administered" by an office of the University, (b) the "evidence" would show that the trustee

4. Art. I, § 2, Mo.Const., Ninth and Fourteenth Amendments, U.S.Const.

"rubber stamps"[5] the recipients of funds who are actually "selected" by the University, and (c) it is "believed" that the evidence would show that the scholarship makes up three-fourths of the scholarship money at the university and as such has "virtually" created a sexually discriminatory scholarship program[6], (2) the petition contains a short and plain statement of facts, (3) the Civil Rights Act, 42 U.S.C.A. § 1983(a) supports a claim for damages based on sex discrimination, (b) authorizes such a claim to be cognizable in a state court, (c) the state Board of Curators or the state officers are not immune from such a claim, and (4) the claim is not moot.

■ On the other hand the several defendants on appeal raise several points. Together they raise the contentions that (1) the petition does not state a claim for relief because there was no violation of the appellant's constitutional rights since there was no state action involved, (2) the claim was moot since plaintiff had graduated from law school[7], (3) that the state court lacked jurisdiction over the subject matter because the state court may not entertain a § 1983 action, (4) that no damages may be maintained under § 1983 and that (5) the Board of Curators is immune.[8]

## V.

■ Before we examine the critical issue central to the disposition of this case, we must determine whether this action brought under § 1983 is cognizable in the state court. The Attorney General contends that no jurisdiction lies. He relies on *Chamberlain v. Brown*, 223 Tenn. 25, 442 S.W.2d 248 (Tenn.1969) and *Beauregard v. Wingard*, 230 F.Supp. 167, 185 (S.D.Cal. 1964). It is argued that § 1983 creates a uniquely federal remedy which a state court is powerless to adjudicate.

The Supreme Court of the United States has not clearly articulated[9] whether the

---

5. This term is also stated in appellant's statement of facts with no reference to a transcript page. There is no such term in the transcript.

6. The motion to dismiss tests the sufficiency of the petition, not evidence, to state a claim for relief. Only those matters appearing on the face of the petition and matters which may be raised by motion are considered. *Cf. Hamilton v. Linn*, 355 Mo. 1178, 200 S.W.2d 69 (Mo. 1947). Since the motion brought out matters outside the pleadings, the trial court may have treated the motion to dismiss as one for summary judgment. Rule 55.27(a). There is no indication, however, that it did so, therefore we rule on whether the petition states a claim.

7. Both the Bank and Board of Curators contend the claim is moot because Ms. Shapiro has graduated from law school. Ms. Shapiro contends it is not because she may desire to go to graduate school. While we believe the claim may well be moot under Missouri cases, mootness does not preclude a decision where the question is one of great public importance and involves public rights or interests under conditions which may readily recur. *Triplett v. Grundy Electric Cooperative, Inc.*, 389 S.W.2d 401, 408 (Mo.App.1965); *Lawyers' Association of St. Louis v. City of St. Louis*, 294 S.W.2d 676, 680 (Mo.App.1956); *Western Auto Supply Company v. Banner*, 288 S.W.2d 402, 403 (Mo. App.1956). *See also State ex rel. Reser v. Rush*, 562 S.W.2d 365 (Mo.1978).

8. Because of the disposition we make of this cause it is unnecessary to determine whether damages may be maintained in a § 1983 action nor is it necessary to determine whether and under what circumstances the Board or the individual members are immune. For the issue of damages see: *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Monell v. Dept. of Soc. Serv. of City of N.Y.*, — U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Thonen v. Jenkins*, 517 F.2d 3, 5 (4th Cir. 1975); for the issue of immunity see: *Gay Lib v. The University of Missouri*, 416 F.Supp. 1350, 1365 (W.D.Mo.1976), rev'd. on other grounds, 558 F.2d 848 (8th Cir. 1977); *Cf. Monell v. Dept. of Soc. Serv. of City of N.Y., supra*, overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as it holds that local governments are immune under § 1983. *See also* cases collected in *Gay Lib*, 416 F.Supp. at 1364 including *Prostrollo v. University of South Dakota*, 507 F.2d 775 (8th Cir. 1974) and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

9. Three decisions by cogent implication hold that the § 1983 remedy is available in the state court: *Jones v. Hildebrant*, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977); *Adlinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), dissent of Brennan, J., n. 17, 427 U.S. at 36, 96 S.Ct. at 2430, 49 L.Ed.2d at 298; and *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969).

state courts have concurrent jurisdiction to entertain § 1983 claims. The state courts which have considered the matter (save one—*Chamberlain v. Brown*) are of the opinion that the 1871 Civil Rights Act does not exclude jurisdiction in the state courts. This opinion rests on both 28 U.S.C.A. § 1343 which vests original but not exclusive jurisdiction in the federal system and the legislative history of the Civil Rights Act and its successor statutes. The courts which have considered the matter have concluded that § 1983 does not reserve exclusive jurisdiction in the federal courts, but that a § 1983 action is cognizable in the state courts.[10] In *Alberty v. Daniel*, 25 Ill.App.3d 291, 323 N.E.2d 110, 113–114 (1974), the Illinois court held that an action is cognizable in the state system concurrently with the federal court.

The contention of the Attorney General that a state court has no power to adjudicate a § 1983 claim rests on *Chamberlain* and *Beauregard*. These cases stand alone and contrary to all the decisions of the respective courts of each respective jurisdiction which are unanimous that 28 U.S.C.A. § 1343 allows a state court to adjudicate such claims concurrently with the federal court.

The Attorney General also cites *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). That case does not concern the problem of state court jurisdiction but only the right of the petitioner to enjoin under § 1983 a state court proceeding which threatens his constitutional rights.

Based on § 1343, 28 U.S.C.A. and the authority of most courts which have considered the question and based on the fact that the circuit courts of this state are courts of general jurisdiction and such courts are vested with concurrent jurisdiction of actions under § 1983, the trial court therefore is required to adjudicate the cause brought by Ms. Shapiro.

## VI.

■ Turning to the merits relative to "state action", the precise issue, as we perceive it, is whether the equal protection clause of the Fourteenth Amendment and the Civil Rights Act § 1983 are violated when a private individual establishes a charitable trust for scholarships for the benefit of "deserving boys" to attend a private university which later becomes public and the funds are disbursed under the will by a private trustee but the state university processes, and from a particular class of boys makes a "tentative award"[11] to members of that class and forwards the names to the private trustee which are then "approved" by the trustee. Does such "process and procedure" excluding women applicants violate constitutional principles? The resolution of this issue is not an "easy task" because the courts are committed to both educational opportunity for all and to the encouragement of private charitable trusts. There is no doubt under the facts that the University is "involved" in the administration of the trust but so is the private trustee. The question is is the "in-

---

10. See *Alberty v. Daniel*, 25 Ill.App.3d 291, 323 N.E.2d 110, 113–114 (1974)—choosing not to follow *Chamberlain*; *Dudley v. Bell*, 50 Mich. App. 678, 213 N.W.2d 805, 806–807 (1976); *Gomez v. Board of Ed. of Dulce Ind. Sch. Dist. No. 21*, 85 N.Mex. 708, 516 P.2d 679, 681 (1973) —recognizing principle; *McClanahan v. Cochise College*, 25 Ariz.App. 13, 540 P.2d 744, 751 (1975); *Silverman v. University of Colorado*, 36 Colo.App. 269, 541 P.2d 93, 98 (1975); *Commonwealth ex rel. Saunders v. Creamer*, 464 Pa. 2, 345 A.2d 702 (1975); *Clark v. Bond Stores, Inc.*, 41 A.D.2d 620, 340 N.Y.S.2d 847 (1973).

Federal decisions contrary to *Beauregard v. Wingard* are: *Long v. District of Columbia*, 152

U.S.App.D.C. 187, 469 F.2d 927, 937 (1972); *Luker v. Nelson*, 341 F.Supp. 111, 116 (N.D.Ill. 1972); *Davis v. Towe*, 379 F.Supp. 536, 538 (E.D.Va.1974) aff'd. without opinion, 526 F.2d 588 (4th Cir. 1975); *International Prisoners' Union v. Rizzo*, 356 F.Supp. 806, 810 (E.D.Pa. 1973); *Bennun v. Board of Governors of Rutgers, Etc.*, 413 F.Supp. 1274, 1279 (D.N.J.1976).

11. A letter from the associate Director of the financial aid office stated that the staff makes "tentative awards" (not selects) and the recommendations are forwarded to the trustee and the students are then notified of the scholarships. The Bank contends that the University merely performs ministerial duties.

volvement" of the University so pervasive or extensive that the involvement constitutes state action.

The "process and procedure" for disbursing scholarship funds under the Victor Wilson Trust, as we garner it from the petition, answers to interrogatories, and the motions to dismiss, are as follows: (1) information concerning the Victor Wilson Scholarship is widely disseminated and appears in the under-graduate catalog, (2) general university applications are completed by an applicant and filed with the student financial aid office, (3) a financial statement is also completed, (4) the financial statement is processed by a nationally recognized agency, (5) the student financial aid office receives reports of academic standing of the applicant which must be roughly in the top quartile of entering and continuing male students, (6) when all files are completed they are forwarded to a professional staff within the University which reviews the eligible candidates, (7) the professional staff forwards the names of those persons within the class established by the trust and makes a "tentative award" subject to the approval of the private trustee and the recommendation letters are forwarded to the trustee bank for "approval" and (8) after such approval by the private trustee the University informs the male students of their awards.[12] The University does not, however, recommend any female students.

The appellant's petition alleges that the University has developed a "process and procedure" through which women are systematically screened out and excluded solely on the basis of sex.

Appellant, Ms. Shapiro, concedes that a private individual may dispose or use his or her money or property to benefit any particular person or group even though there is discrimination on the basis of sex, but argues that the "process and procedures" here involve an agency of the state in such a degree to assist in the achievement of discrimination by "screening out" women from the fund and that such process and procedures are violative of the constitutional provisions of federal law.[13] We must determine whether under the Fourteenth Amendment as applied to the states and state constitutional provisions there is significant state action so as to violate appellant's constitutional rights.

## VII.

The concept of "state action" [14] has had a long and involved history. Neither the Supreme Court of the United States, nor any other court, has attempted the "impossible task" of formulating an infallible test to determine whether the state "in any of its manifestations has become significantly involved in private discriminations." *Reitman v. Mulkey*, 87 S.Ct. at 1632.

The general principles are well known. But, as Mr. Justice Douglas indicates "generalizations do not decide concrete cases." *Evans*, 86 S.Ct. at 488.

■ The dichotomy set forth in the Fourteenth Amendment between deprivation by the State, subject to scrutiny under its pro-

---

12. This appears to be the actual procedure used.

13. She relies on various authorities including *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Burlington v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) and *Commonwealth of Pennsylvania v. Board of Directors of City Trusts of the City of Philadelphia*, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957). The Philadelphia case has a long history: See *In re Girard Trusteeship*, 391 Pa. 434, 138 A.2d 844 (1958), *cert. den.* 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1958); *Commonwealth of Pennsylvania v. Brown*, 270

F.Supp. 782 (E.D.Pa.1967); *Commonwealth of Pennsylvania v. Brown*, 392 F.2d 120 (3rd Cir. 1968), *cert. den.* 391 U.S. 921, 88 S.Ct. 1811, 20 L.Ed.2d 657 (1968); Clark, Charitable Trusts, The Fourteenth Amendment and the Will of Stephen Girard, 66 Yale L.J. 979 (1957); IV Scott, Trusts, § 370.5, pp. 2876–2878 (1967).

14. See Lewis, The Meaning of State Action, 60 Colum.L.Rev. 1083 (1960); Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065 (1969); Goldstein, Death and Transfiguration of the State Action Doctrine—*Moose Lodge v. Irvis* to *Runyon v. McCrary*, 4 Hastings Const.L.Q. 1 (1977).

visions and private conduct "however discriminatory and wrongful" against which the Fourteenth Amendment offers no shield goes back as far as the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed.2d 835 (1883).[15] There was "embedded in our constitutional law" the principle that "the action inhibited by the [Equal Protection Clause] of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 843, 92 L.Ed. 1161 (1948). Private conduct abridging individual rights does no violence to the Equal Protection Clause unless to "some significant" extent "the State in any of its manifestations has been found to have become involved in it." *Burton v. Wilmington Parking Authority*, 81 S.Ct. at 860. It is clear therefore that private discriminatory action is not violative of any constitutional principle and is indeed beneficial to a freedom loving society. It is only when the state "so far" insinuates itself into a "position of interdependence" that it becomes a "joint participant" in the challenged activity or where private conduct becomes "so entwined" with governmental policies that there is a violation. *Evans v.*

*Newton*, 86 S.Ct. at 488; [16] *Burton v. Wilmington Parking Authority*, 81 S.Ct. at 862. "The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action . . . so that the action . . . may be fairly treated as that of the state itself." *Jackson*, 95 S.Ct. at 453.

■ While there are many tests as to what constitutes state action,[17] probably the ultimate is "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton*, 81 S.Ct. at 860.[18]

In *Burton v. Wilmington Parking Authority, supra*, the Supreme Court of the United States held that there was "state action", violative of the Equal Protection clause, when a coffee shop, located in a building owned and operated by a state agency refused to serve blacks. The land and building were publicly owned, and the building was dedicated to public uses in the performance of the State agency's essential governmental functions. Upkeep and maintenance were responsibilities of the state agency. All of these and other activities, obligations and responsibilities of the Wilmington Parking Authority (a state

15. See *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

16. The holdings of the Supreme Court indicate that where the "impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibitions." *Moose Lodge v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972).

17. See Developments in the Law, *supra*, 82 Harv.L.Rev. at 1069–1072 and Note, Sex Restricted Scholarships and the Charitable Trust, 59 Iowa L.Rev. 1000, 1002–1005 (1976). See also discussion by Higgins, C., in *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808, 819 (Mo.1975), *cert. den. sub nom. Sutt v. First National Bank of Kansas City*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975) and *Lakeside Hospital Association v. First National Bank of Kansas City*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

18. Numerous other tests also exist: (1) When private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State subject to its constitutional limitations; or where there is government "control". *Evans v. Newton*, 86 S.Ct. at 488; (2) Another test in the context of the opinion is "state participation through any arrangement, management, funds or property." *Cooper v. Aaron*, 358 U.S. 1, 4, 78 S.Ct. 1401, 1403, 3 L.Ed.2d 5 (1958) quoted in *Burton*, 81 S.Ct. at 860; (3) State action for purposes of Equal Protection may emanate from rulings of administrative agencies. *Irvis*, 92 S.Ct. at 1974; (4) the "public function" analysis, *Terry v. Adams*, 345 U.S. 461, 469, 73 S.Ct. 809, 813, 97 L.Ed. 1152 (1953); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). See also dissent by Mr. Justice Stevens in *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

agency), together with the fact that the coffee shop was operated as an integral part of a public building indicated that degree of state participation and involvement in discriminatory action contrary to the design of the Fourteenth Amendment. Although the state neither commanded or expressly authorized or encouraged discrimination, the state by its inaction made itself a party to the refusal of services which could not be considered the purely private choice of the restaurant operator.

In *Reitman v. Mulkey, supra*, a provision of the California Constitution prohibiting the state from denying the right of any person to decline to sell, lease or rent his real property to any person in his absolute discretion involved significant state action and was found violative of the constitutional prohibitions.

In *Evans v. Newton, supra*, one of few cases coming to the Supreme Court involving a trust, the Supreme Court held that state action was "entwined" with private action. There, former Senator Bacon of Georgia executed a will which devised to the City Council, as trustee, a tract of land which was to be used for a park for white people only. The will provided that the park should be under the control of a Board of Managers all of whom were white. After the city took the position that the park was a public facility, the Board of Managers sought to remove the City as trustee and appoint new trustees. The Supreme Court held that the tradition of the use of the park for public activities where the tradition of municipal control had become firmly established, the substitution of private trustees did not transfer the park from the public to the private sector.[19]

In *Commonwealth of Pennsylvania v. Board of Directors, supra*, the high court held that where the will of Stephan Girard left a fund in trust to the City of Philadelphia for the erection and maintenance of a college for "poor white male orphans" state action was involved.

"The Board which operates Girard College is an agency of the State of Pennsylvania. Therefore, even though the Board was acting as a trustee, its refusal to admit [black applicants] to the college . . . was discrimination by the State." 77 S.Ct. at 807.

Not every activity of this State, however, constitutes state action prohibited by constitutional provisions. In *Moose Lodge v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), Irvis was refused service by Moose Lodge because of his race. He contended that because the state liquor board had issued the Lodge a private club license that authorized the sale of alcoholic beverages, the refusal of services to him was state action for purposes of the Equal Protection Clause. The Court held that the operation of the State's regulatory scheme enforced by the state liquor board did not sufficiently implicate the state in the discriminatory guest policies of the club so as to constitute state action:

"Our holdings indicate that where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . ." 92 S.Ct. at 1971.

And in *Jackson v. Metropolitan Edison Company, supra* no state action was found where a state regulated utility terminated electric service without affording notice and a hearing.

Finally, in *First National Bank v. Danforth, supra*, we held that there was no invidious discrimination or state action where Mr. Homer McWilliams established the "McWilliams Memorial Hospital Trust" and directed that the net income from the trust be used annually for the maintenance, support and care of sick and infirm patients "born of white parents in the United States of America." Mr. McWilliams was a private individual; the corpus of the trust was derived solely from his private funds; the trustee was a privately owned bank. No public body was involved; no entwinement

---

19. See *Evans v. Abney*, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970) where the Court held that the Bacon trust failed and that cy pres was not to be applied.

by the state was found, hence there was no state action.[20]

■ It is clear that the Fourteenth Amendment does not apply to purely private trusts. *In Re Will of Potter*, 275 A.2d 574, 580 (Del.Ch.1970). As stated by Mr. Justice Douglas in *Evans v. Newton, supra*:

"If the testator wanted to leave a school or center for the use of one [group] only and in no way implicated the state in the supervision, control or management of that facility, we assume *arguendo* that no constitutional difficulty would be encountered." *Evans*, 86 S.Ct. at 489.

### VIII.

In the area of the establishment of scholarship funds to attend a college or university, the law is now developing. There are many legitimate varieties and purposes for such scholarship funds. Funds come from a great variety of sources and trusts designate many types of eligible recipients. Sororities establish scholarships for "any woman with a master's degree"; scholarships have been established to aid "young women of the Greater New Bedford Area"; scholarships aid persons of "Scottish descent" and "Black veterans". See Note, Sex Restricted Scholarships and the Charitable Trust, 59 Iowa L.Rev. at 1001.

While scholarships or trust funds have been available to only persons of one sex or race, these restrictions have not, in the past, been the precise issue in controversy.[21] It is only in recent years that the sensitivity to sex discrimination has brought challenges. No case has been decided in this state. In this area, each case must hinge on its own facts. The involvement of the State may take many forms. It ranges from state institutions being named and acting as the trustee to the mere admission of a student. Between these poles lies a difficult area.

### IX.

From the principles discussed in all the authorities summarized above, and from the facts as developed in this particular case, we cannot conclude that by sifting all the facts and circumstances there was "state action" involved here. Mr. Victor Wilson established a private trust for the benefit of deserving Kansas City "boys". He was a private individual; he established the trust with his private funds; he appointed a bank as private trustee; he established in his will a procedure by which the recipients of the trust funds would be selected. The trustee was to approve the selections. Under the terms of the will no public agency or state action is involved. Discrimination on the basis of sex results from Mr. Wilson's personal predilection. That is clearly not unlawful. And taking the allegations of the appellant's petition, and allegations raised on the motions to dismiss and the record of this proceeding, we do not believe that the participation by the agents of the University of Missouri at Kansas City is of such a significant extent in any of its manifestations or is so entwined with private conduct that state action results.

The dissemination of information by the University in a catalog and by other means, the accepting and processing of applications by the financial aid office, the determining of academic standards and financial needs, the making of a "tentative award" or the "nomination" and forwarding the names of qualified male students to the private trustee which "approve" the names of the male students and which finally award the scholarship does not in our opinion rise to the level of state action.

The involvement of the University is not such which calls into play the Fourteenth Amendment. The agents of the University, under the will, do not have the *power* to "select", or "determine", or "ultimately and finally determine" those qualified "boys" who finally are awarded scholarship funds.

---

**20.** Both parties rely on *Danforth*. That case is factually distinguishable because there was no state activity. That case is not controlling as to the facts here.

**21.** See Note, *supra*, 59 Iowa L.Rev. 1000; Note, Restricted Scholarships State Universities and The Fourteenth Amendment, 56 Va.L.Rev. 454 (1970).

The trustee has that power. The trustee has the power to "approve" male applicants. The power to "approve" includes the power to "disapprove". The final and last act of "selection" is left to and is that of the private trustee.

This case is not equivalent to a situation where the *trustee* is a state body, or where the "selection committee" is composed of public officials who are required under the trust to "select" the recipients of the funds as in *Girard, Stabler, Buchanan, Wachovia,* and *Potter.*[22] The final decision whether an individual is awarded a scholarship is that of the private trustee. The "process and procedure" of the University has not so far "insinuated itself" in the administration of the trust so that the action is that of the state nor can the challenged action be treated as ultimately that of the state.

The university has no discretion under the terms of the trust to forward the names of women to the private trustee; the discretion exists only as to those members within the class who are recommended for final selection by the trustee. The university cannot request the trustee to violate the terms of the trust thus subjecting it to possible sanctions.

Viewing the allegations of the petition as drawn, it does not state a claim.

We, of course, approve equal access to educational opportunity. Such opportunity is important to our society. But this must be balanced by the right of a private person to dispose of his money or property as the testator wishes, and unless the trust is unlawful, private trusts are to be encouraged.

Hence, since we hold that there is no constitutional violation of equal protection or federal law, the trial court did not err in dismissing the second amended petition with prejudice.

## X.

■ Plaintiff also alleges a right under 42 U.S.C.A. § 1983. The "under color of law" provision is equivalent to the state action requirement under the Fourteenth Amendment.[23] Because we conclude that there is no significant state action, plaintiff's claim under § 1983 also fails. Section 1983 was intended to encompass only conduct supported by state action. *Adickes v. S. H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 1611–1614, 26 L.Ed.2d 142 (1970); *Lucas v. Wisconsin Electric Power Company,* 466 F.2d 638, 654–656 (7th Cir.

22. *Milford Trust Company v. Stabler,* 301 A.2d 534 (Del.Ch.1973). There over a period of years the selection committed consisted of persons who had held or held positions in the state educational administration. The will of the testator did not provide as to how selection was to be made, and the selections were actually and finally made by state officers.

In *Bank of Delaware v. Buckson,* 255 A.2d 710 (Del.Ch.1969) the committee named in the will to "decide" scholarships were state officers and the will was construed to include blacks because of the language of the instrument.

In *Wachovia Bank and Trust Company, N.A. v. Buchanan,* 346 F.Supp. 665, (D.C.Cir.1972), aff'd. without opinion, 159 U.S.App.D.C. 343, 487 F.2d 1214 (1973) the recipients were to be awarded scholarships by a committee composed of persons holding elective or appointed public positions. The court held that under such circumstances the administration of the trust was on a discriminating basis.

In *In Re Will of Potter, supra,* the Delaware Court held that the Chancery Court was so involved in the trust that state action existed. The court stated that the "involvement of the

Court of Chancery in the supervision and direction of the administration of the charitable trust [of Colonel Potter] is of such an established and pervading nature that such involvement constitutes that type of governmental entwinement with the affairs of a charitable trust which calls into play the Fourteenth Amendment." 275 A.2d 583. *Cf.* Annot., 25 A.L.R.3d 736, 741–746 (1969) and 1977 Supp. at 19–21, and *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975).

23. *Flagg Bros., Inc. v. Brooks,* 553 F.2d 764, 766 (2nd Cir. 1977); *cert. granted* 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977), rev'd. on other grounds, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Parks v. "Mr. Ford",* 556 F.2d 132, 135, note 5 (3rd Cir. 1977); *Shirley v. State National Bank of Connecticut,* 493 F.2d 739, 741 (2nd Cir. 1974), *cert. den.* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Adams v. Southern California First National Bank,* 492 F.2d 324, 329 (9th Cir. 1973); *Martin Hodas, East Coast Cinematics v. Lindsay,* 431 F.Supp. 637 (D.C.N.Y.1977); *Weiss v. J. C. Penney, Co., Inc.,* 414 F.Supp. 52 (D.C.Ill.1976).

1972), *cert. den.* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973).[24]

Although appellant raises other points, they are not necessary for a resolution of this proceeding since we have resolved the central issue. The judgment of the trial court in dismissing the second amended petition should be affirmed.

Judgment affirmed.

MORGAN, C. J., and BARDGETT, FINCH, and RENDLEN, JJ., concur.

DONNELLY, J., concurs in part and dissents in part in separate opinion filed.

SEILER, J., concurs in part and dissents in part and concurs with separate opinion of DONNELLY, J.

JOSEPH J. SIMEONE, Special Judge, concurs in part and dissents in part in separate opinion filed.

DONNELLY, Judge, concurring in part and dissenting in part.

I concur in Part V of the majority opinion. It recognizes that an action brought under 42 U.S.C.A., § 1983 is cognizable in Missouri state courts. I dissent to the remainder of the opinion.

As recognized in the majority opinion, a resolution of the issues in this case is "not an 'easy task' because the courts are committed to both educational opportunity for all and to the encouragement of private charitable trusts." However, despite the difficulty of the issues and the importance of facts for a proper resolution of the issues, the majority proceeds to find the facts and to determine the issues without affording plaintiff an opportunity to present the facts in evidence at a trial.

In *Boyer v. Guidicy Marble, Terrazzo & Tile Co.,* 246 S.W.2d 742, 744 (Mo.1952), this Court said:

"It is important to be mindful of the fact that we here consider only the question of whether plaintiff's amended peti-

tion, when its averments are accorded every reasonable and fair intendment, states a claim which can call for the invocation of the principles of substantive law which may entitle plaintiff to relief. . . . "

In *Scheuer v. Rhodes,* 416 U.S. 232, 249, 250, 94 S.Ct. 1683, 1693, 40 L.Ed.2d 90 (1974), the plaintiffs had filed a complaint seeking damages against the President of Kent State University and other government officials. The defendants claimed immunity. The District Court dismissed the complaint on the basis of the allegations of the complaint and affidavits filed by defendants. The United States Supreme Court reversed and said:

"These cases, in their present posture, present no occasion for a definitive exploration of the scope of immunity available to state executive officials nor, because of the absence of a factual record, do they permit a determination as to the applicability of the foregoing principles to the respondents here. . . .

\*   \*   \*   \*   \*   \*

"The documents properly before the District Court at this early pleading stage specifically placed in issue whether the Governor and his subordinate officers were acting within the scope of their duties under the Constitution and laws of Ohio; whether they acted within the range of discretion permitted the holders of such office under Ohio law and whether they acted in good faith both in proclaiming an emergency and as to the actions taken to cope with the emergency so declared. Similarly, the complaints place directly in issue whether the lesser officers and enlisted personnel of the Guard acted in good-faith obedience to the orders of their superiors. Further proceedings, either by way of summary judgment or by trial on the merits, are required. The complaining parties are entitled to be heard more fully than is possible on a motion to dismiss a complaint.

---

**24.** The parties do not raise and we do not consider what effect, if any, the 1972 Amendments to Title IX of the Higher Education Act have on this cause. *See* 20 U.S.C., § 1681 et seq.; 15 Am.Jur.2d, Civil Rights, § 84, pp. 468–470 (1976); Title IX, § 901, Education Amendments of 1972, 1 U.S.Code Congressional and Admin.News, pp. 444–445.

"We intimate no evaluation whatever as to the merits of the petitioners' claims or as to whether it will be possible to support them by proof. We hold only that, on the allegations of their respective complaints, they were entitled to have them judicially resolved."

In my opinion, plaintiff is entitled to have "judicially resolved" the issues (1) whether state action is involved in this case, and (2) whether the doctrine of deviation or the cy pres doctrine should be applied here. I would reverse the judgment of the trial court and remand the case for trial.

JOSEPH J. SIMEONE, Special Judge, concurring and dissenting.

I concur in part and dissent in part.

As to the principal issue—state action—I respectfully dissent. The thrust of the majority opinion is that the University of Missouri at Kansas City is not so entwined with the administration of the Victor Wilson Trust so as to constitute state action within the meaning of the Constitution or federal law. I disagree.

The majority opinion correctly traces the law and history of state action. But I believe that the involvement of the University now a public institution is of such a prevailing nature so as to constitute that type of governmental entwinement with the administration of the trust which calls into play the doctrine of state action.

While Mr. Wilson established a private trust for the benefit of deserving boys with private funds and appointed a private trustee, the actual administration of the trust by the University of Missouri as it has been operated over the years involves, in my opinion, the University and its agents to such an extent that I believe state action is involved. For all practical purposes the University through its agents "selects" the males who are to receive the scholarship funds thus engaging in state action. Although the private trustee has the power of "approval" under the trust there is no indication in all recent years of its operation that the University has disapproved any male applicant. The University accepts the applications, makes a tentative award and in effect "selects" the male applicants who are to receive the benefit of the scholarship fund. The acts of the University are more than ministerial. The trust as it has been administered by the University has shed its purely private character and has become a public one. The involvement of the public University is, in my opinion, of such a prevailing nature so that there is governmental entwinement constituting state action.

Under the facts and the authorities I would conclude that the administration of the Victor Wilson Trust by a public institution involves state action which, if proved upon hearing, would be violative of constitutional and statutory principles. I believe therefore that the petition states a claim.

Appellant also alleges a right under 42 U.S.C. § 1983. The "under color of law" provision is equivalent to the state action requirement under the Fourteenth Amendment. *Parks v. "Mr. Ford"*, 556 F.2d 132, 135, note 5 (3rd Cir. 1977). Because I believe that the petition alleges significant "entwinement" by the University and find "state action", I believe plaintiff also states a claim under § 1983. That section is intended to encompass conduct supported by state action. *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 1611–1614, 26 L.Ed.2d 142 (1970).

II.

I agree with the majority opinion in its holding that the state court is vested with concurrent original jurisdiction of actions brought under § 1983.

III.

Although I believe state action is involved under the facts here and would reverse and remand the cause for further proceedings, I would not, as appellant prays, apply the doctrine of cy pres to construe the Trust by substituting the word "students" or "individuals" for the word "boys" in Article VIII.

The doctrine of cy pres alters the purpose of the trust, whereas the doctrine of devia-

tion only amends the method of administration of the trust. See *Reed v. Eagleton,* 384 S.W.2d 578, 585 (Mo.1964).

I would apply the principle of deviation. The remedy prayed for in my opinion is too drastic—to displace one trust purpose for another. Any constitutional infirmity is in the administration of the trust and not in its purpose. The trust can be insulated from governmental action by the removal of the University of Missouri from the selection process of the beneficiaries.

### IV.

I believe that the petition states a claim and would reverse and remand. I therefore respectfully dissent in part.