**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY HELEN COAL CORPORATION, a
Virginia Corporation,
             *Plaintiff-Appellant,*

v.

MARTY D. HUDSON; MICHAEL H.
HOLLAND, Trustees of the United
Mine Workers of America
Combined Benefit Fund and
Trustees of the 1992 United Mine
Workers of America Benefit Fund;
THOMAS O. S. RAND, Trustees of the
United Mine Workers of America
Combined Benefit Fund; ELLIOTT A.
SEGAL, Trustees of the United Mine
Workers of America Combined
Benefit Fund; CARLTON R. SICKLES,
Trustees of the United Mine
Workers of America Combined
Benefit Fund; GAIL R. WILENSKY,
Trustees of the United Mine
Workers of America Combined
Benefit Fund; THOMAS F. CONNORS,
Trustees of the 1992 United Mine
Workers of America Benefit Plan;

No. 99-2181

Robert Wallace, Trustees of the 1992 United Mine Workers of America Benefit Plan; Willliam P. Hobgood, Trustees of the United Mine Workers of America Combined Benefit Fund,
      *Defendants-Appellees.*

Pardee & Curtin Lumber Company; The Stearns Company Ltd.,
      *Amici Curiae.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-97-71-3)

Argued: October 31, 2000

Decided: December 19, 2000

Before WILKINSON, Chief Judge, and NIEMEYER and
MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Motz joined. Judge Niemeyer wrote a concurring opinion.

## COUNSEL

**ARGUED:** Patrick Michael McSweeney, MCSWEENEY, BURTCH & CRUMP, P.C., Richmond, Virginia, for Appellant. Peter Buscemi, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** John L. Marshall, Jr., MCSWEENEY,

BURTCH & CRUMP, P.C., Richmond, Virginia, for Appellant. David W. Allen, Office of the General Counsel, UMWA HEALTH AND RETIREMENT FUNDS, Washington, D.C.; John R. Mooney, MOONEY, GREEN, BAKER, GIBSON & SAINDON, P.C., Washington, D.C.; Samuel M. Brock, III, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees. John T. Montgomery, Robert Daniel O'Connor, Scott D. Pomfrett, ROPES & GRAY, Boston, Massachusetts, for Amici Curiae.

---

## OPINION

WILKINSON, Chief Judge:

This case arises in the wake of the Supreme Court's decision in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). In *Eastern*, the Court held that Coal Act premiums assessed against companies such as Mary Helen Coal violated the Fifth Amendment. Although the defendants returned the unconstitutionally collected premiums, they refused to compensate Mary Helen for lost interest. Mary Helen is entitled to an award of prejudgment interest because of the general rule that interest follows principal. Neither the absence of an authorizing statute nor ERISA's anti-inurement provision bars such an award. Accordingly, the judgment of the district court is reversed and remanded with instructions to calculate the amount of prejudgment interest owed to Mary Helen.

I.

Mary Helen Coal Corporation mined coal from 1921 until 1963. During this time, the United Mine Workers of America (UMWA), a labor union representing coal miners, negotiated a series of collective bargaining agreements with the Bituminous Coal Operators' Association (BCOA). The agreements are collectively referred to as the National Bituminous Coal Wage Agreements (NBCWAs). Mary Helen was a signatory to at least two of these agreements: the 1946 Welfare and Retirement Fund and the 1950 NBCWA. The agreements were revised in 1974 and 1978, though by this time Mary Helen was no longer actively mining coal and thus was not a party to either agreement.

By the late 1980s, escalating health care costs threatened the solvency of the most recent benefit plan. In response, Congress enacted the Coal Industry Retiree Benefit Act of 1992 (Coal Act). The Act created two new funds, including the Combined Fund. The Combined Fund provides benefits to coal industry retirees previously receiving benefits under the 1950 or 1974 NBCWAs. To fund this new program, the Coal Act required coal operators who had previously participated in any of the NBCWAs to pay annual premiums. The premium requirement thus applied to companies like Eastern Enterprises and Mary Helen even though they had not mined coal for many years.

Mary Helen filed suit against Marty Hudson and the other Trustees of the Combined Fund (Trustees). In its complaint, Mary Helen alleged that the Coal Act premiums violated the Due Process and Takings provisions of the Fifth Amendment. *See Mary Helen Coal Corp. v. Hudson*, 976 F. Supp. 366 (E.D. Va. 1997) (*Mary Helen I*). Following then binding precedent, the district court rejected Mary Helen's claims and ordered it to pay all outstanding premiums plus interest. *See id.* at 368. Mary Helen appealed.

This court held Mary Helen's appeal in abeyance pending the Supreme Court's decision in *Eastern*. *See Mary Helen Coal Corp. v. Hudson*, No. 97-2331, 1998 WL 708687 (4th Cir. Sept. 24, 1998). Eastern Enterprises, like Mary Helen, stopped mining coal in the mid-1960s. In *Eastern*, the Supreme Court held that the Coal Act was unconstitutional as applied to Eastern Enterprises. *See* 524 U.S. at 504. No single opinion in *Eastern* garnered five votes. The four Justice plurality held that the Coal Act violated the Takings Clause. *See id.* at 538. According to the plurality, the Coal Act imposed severe, unanticipated retroactive liability upon Eastern Enterprises in amounts substantially disproportionate to the company's prior experience with miner benefits. *See id.* at 529-31. Justice Kennedy, who concurred only in the judgment, concluded that the Coal Act premiums were not amenable to a Takings analysis. *See id.* at 547. According to Justice Kennedy, however, the Coal Act violated the Due Process Clause because it bore no legitimate relation to the government's asserted interests and the degree of retroactive effect was severe. *See id.* at 549. The four dissenting Justices agreed with Justice Kennedy that the Due Process Clause provided the relevant frame-

work, but disagreed with his conclusion about the existence of a constitutional violation. *See id.* at 558-59 (Breyer, J., dissenting).

Once that decision was announced, we granted Mary Helen's motion for summary reversal on the grounds that its case was materially indistinguishable from *Eastern*. *See Mary Helen Coal*, 1998 WL 708687 at *1. The Trustees subsequently refunded the premiums paid by Mary Helen, but refused to compensate Mary Helen for the interest lost.

Mary Helen returned to district court seeking, among other things, $341,727.74 in prejudgment interest. The district court denied this request. *See Mary Helen Coal Corp. v. Hudson*, 57 F. Supp.2d 318 (E.D. Va. 1999) (*Mary Helen II*). According to the district court, the absence of a statute allowing an award of prejudgment interest meant that such an award was not required. *See id.* at 319. The district court also noted that any award of interest would be paid from the assets of the Combined Fund. According to the court, this meant prejudgment interest was barred by ERISA's anti-inurement provision, which states that "the assets of a plan shall never inure to the benefit of any employer." *Id.* (quoting 29 U.S.C. § 1103(c)(1)). Mary Helen now appeals.

## II.

We have already determined that the Coal Act's premium requirement, as applied to Mary Helen, violated the Fifth Amendment of the Constitution. *See Mary Helen Coal*, 1998 WL 708687 at *1. Awarding prejudgment interest to Mary Helen, therefore, would simply give full effect to the Supreme Court's decision in *Eastern* and this court's holding in *Mary Helen I*, by providing full compensation for the harms suffered.

The usual rule that "interest follows principal" is long and well established. *See Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998). *See also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980) ("The usual and general rule is that any interest . . . follows the principal and is to be allocated to those who are ultimately to be the owners of that principal."). The *Phillips* Court noted that this rule has existed "under English common law since at

least the mid-1700's" and that it "has become firmly embedded in the common law of the various States." 524 U.S. at 165. Read together, therefore, *Eastern* and *Phillips* indicate that Mary Helen receive prejudgment interest on the premiums it paid. It is undisputed that after *Eastern* the Trustees had to refund the principal amounts paid by Mary Helen. Since the principal belonged to Mary Helen, so too did the interest earned. That the Trustees collected the premiums in good faith does not change the fact that doing so violated Mary Helen's constitutional rights. Thus, to deny an award of prejudgment interest would undercut the Supreme Court's jurisprudence.

Prejudgment interest is simply "an element of" Mary Helen's "complete compensation." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). *See also West Virginia v. United States*, 479 U.S. 305, 310 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983). One factor to consider in deciding whether to award prejudgment interest is whether such an award "is necessary to compensate the plaintiff fully for his injuries." *Osterneck*, 489 U.S. at 176. In this case, Mary Helen paid over $540,000 in premiums to the Combined Fund from 1993 to 1996. Mary Helen was deprived of the use of those funds until at least September 1998, when we granted its motion for summary reversal. It is undisputed that the inability to make use of these funds from 1993 to 1998 imposed a measure of harm upon Mary Helen. Thus, an award of prejudgment interest is a critical component of Mary Helen's recovery.

## III.

Mary Helen is thus presumptively entitled to an award of prejudgment interest. Of course, the award of "prejudgment interest is within the discretion of the district court." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000). The district court in this case cited two reasons for its decision not to award prejudgment interest: the absence of any statutory authorization and ERISA's anti-inurement provision. Neither of these rationales, however, bars an award of prejudgment interest to Mary Helen. Thus, the district court's denial of prejudgment interest was an abuse of discretion "guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996).

A.

With regard to the district court's first reason, it is well established that "the absence of a statute [authorizing prejudgment interest] merely indicates that the question is governed by traditional judge-made principles." *City of Milwaukee v. Cement Division Nat'l Gypsum Co.*, 515 U.S. 189, 194 (1995). *See also Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 336-37 (1988); *Rodgers v. United States*, 332 U.S. 371, 373 (1947). Here, the governing principle is one of "fairness." *Blau v. Lehman*, 368 U.S. 403, 414 (1962). As discussed above, because Mary Helen's constitutional rights were violated by the Coal Act, prejudgment interest is mandated if we are to give meaning to the rule that "interest follows principal." *Phillips*, 524 U.S. at 165.

B.

The other obstacle to the recovery of prejudgment interest identified by the district court was ERISA's anti-inurement provision. The Coal Act states that the Combined Fund is a multi-employer, welfare benefit plan under ERISA. *See* 26 U.S.C. § 9702(a)(3)(B) and (C). Section 403(c)(1) of ERISA provides that "the *assets* of a plan shall never inure to the benefit of any *employer* and shall be held for the exclusive purposes of providing benefits . . . ." 29 U.S.C. § 1103(c)(1) (emphasis added). This provision is inapplicable here for two reasons: 1) Mary Helen's premiums never became assets of the Combined Fund; and 2) Mary Helen is not an employer for purposes of the Coal Act or ERISA. Moreover, interpreting the anti-inurement provision in a manner that would bar an award of prejudgment interest to Mary Helen unnecessarily raises serious constitutional questions. Accordingly, the district court erred in concluding that the anti-inurement provision barred an award of prejudgment interest.

1.

By its own terms, the anti-inurement provision does not operate to bar an award of prejudgment interest to Mary Helen. First, Mary Helen's premiums never became "assets" of the fund because they were collected unconstitutionally. Since the Combined Fund never

had lawful ownership of Mary Helen's premiums, it never owned the interest earned on those premiums.

A similar analysis informed the Seventh Circuit's decision in *Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339 (7th Cir. 1992). In that case, the Seventh Circuit held that Lady Baltimore's payments to the pension fund did not become property of the fund until the appeals process was complete and the legality of the payment was finally determined. According to the court, while the appeal was pending the pension fund's interest in the payments was identical to a landlord's interest in a tenant's security deposit. "He can hold the money but he must give it back eventually unless some condition materializes that allows him to keep it. Central States held the interim payments only as (in effect) a bailee until [the claim] was finally adjudicated." *Id.* at 1346. Since Lady Baltimore ultimately prevailed on appeal, the pension fund was required to refund the payments received. *See id.*

Similarly, the Trustees effectively held Mary Helen's premiums as a bailee until the appeals process was completed. After *Eastern* and this court's summary reversal of *Mary Helen I*, the Trustees, like the pension fund in *Lady Baltimore*, became obligated to return the premiums. As a result, the premiums never became an asset of the Combined Fund and the Trustees never had lawful ownership of the interest thus derived. Since the interest earned never became an asset of the Combined Fund, returning it does not run afoul of the anti-inurement provision.

2.

The second difficulty with the Trustees' anti-inurement argument is that Mary Helen never had a valid obligation to contribute to the Combined Fund and thus is not an employer under Title IV of ERISA or the Coal Act. Section 9721 of the Coal Act states that companies such as Mary Helen "shall be treated in the same manner as employers" under "subtitle E of title IV of [ERISA]." 26 U.S.C. § 9721. Many courts have adopted the "contributing obligor" test announced by the Second Circuit in *Korea Shipping* to determine if a company is an employer under Title IV of ERISA. *See Korea Shipping Corp. v. New York Shipping Ass'n*, 880 F.2d 1531, 1537 (2d Cir. 1989). *See*

*also Seaway Port Auth. v. Duluth-Superior ILA Marine Ass'n*, 920 F.2d 503, 507 (8th Cir. 1990); *Carriers Containers Council, Inc. v. Mobile S.S. Ass'n*, 896 F.2d 1330, 1343 (11th Cir. 1990), *amended on reh'g in part by* 904 F.2d 28 (11th Cir. 1990); *Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327, 1331 (9th Cir. 1990). Although Title I of ERISA contains a definition of employer that covers Mary Helen,[1] the Supreme Court has held that Title I definitions "are not necessarily applicable to Title IV, because they are limited by the introductory phrase, 'For purposes of this title.'" *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 370 (1980). *See also Korea Shipping*, 880 F.2d at 1536-37 (although Title I's definition would support the Fund's argument that the carriers were employers, that definition was not relevant in light of Title I's limiting language).

The contributing obligor definition of employer, applicable to Title IV of ERISA, is grounded in the underlying purpose of the statute. Title IV was enacted in 1980 to create withdrawal liability for employers who withdrew from multi-employer benefit plans. The purpose of this scheme was to discourage employers from withdrawing and to reduce the burden on plans in the aftermath of an employer's withdrawal. Title IV thus focuses on an employer's obligation to contribute to a benefit plan. *See Korea Shipping*, 880 F.2d at 1537. Armed with this understanding of the statute, the Second Circuit concluded that an employer under Title IV of ERISA is "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Id.* (internal quotations and citations omitted).

We agree with the Second Circuit's analysis of the purpose of Title IV and join the Eighth, Ninth, and Eleventh Circuits in adopting the contributing obligor test as the appropriate inquiry for determining if a company is a Title IV employer.[2] Even the Trustees agree that the

---

[1]Title I of ERISA defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).

[2]This court has never explicitly defined the term employer for purposes of Title IV of ERISA, nor has it addressed the limits on Title I's

contributing obligor test determines who is an employer for purposes of Title IV. Contrary to the Trustees' claim, however, we do not think that Mary Helen is a contributing obligor. "[T]he appropriate inquiry is whether the alleged employer had an obligation to contribute and what was the nature of that obligation." *Seaway Port Auth.*, 920 F.2d at 508. Here, as the Supreme Court held in *Eastern*, Mary Helen never had a valid "obligation to pay any amount" under the Coal Act. 26 U.S.C. § 9721. Since Mary Helen never had a valid obligation to contribute to the Combined Fund, it was never "obligated to contribute to a plan," and thus is not an employer for purposes of Title IV of ERISA. Since the Coal Act expressly adopts Title IV's definition of employer, Mary Helen is also not an employer for purposes of the Coal Act. Mary Helen's exclusion from the definition of employer is based solely on the Supreme Court's holding in *Eastern*. The Trustees' concern that many other coal companies will henceforth also not be deemed Title IV employers overlooks the limited reach of the *Eastern* decision.

The Trustees cite a number of cases supporting the proposition that ERISA's anti-inurement provision bars the award of prejudgment interest. All of these cases, however, involve payments made under a mistake of fact or law; none address a situation where premiums were collected pursuant to an unconstitutional statute. Further, each decision based its rejection of a prejudgment interest award on the premise that a benefit plan is allowed, but is not required, to refund an employer's excessive payments made by virtue of a mistake of law or fact. *See*, *e.g.*, *Teamsters Local 939 Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865, 868 (4th Cir. 1981). Here, however, the premise is different since a refund of the premiums was constitutionally required. *See Eastern*, 524 U.S. at 538. Moreover, that Mary Helen's payments were made pursuant to an unconstitutional

definitions section. In *Spring Branch Mining Co., Inc. v. United Mine Workers of America 1950 Pension Trust & 1950 Pension Plan*, 854 F.2d 37 (4th Cir. 1988), this court touched upon the issue in a per curiam opinion summarily affirming the district court. In that decision, we noted that the district court had used "a relevant definition of 'employer' found in Title I of ERISA." *Id.* at 39. *Spring Branch Mining* did not, however, hold that Title I's definition of employer applied in all Title IV contexts.

statute does not mean they were made under a mistake of law. *See United States v. Moore*, 627 F.2d 830 (7th Cir. 1980) (mistake concerning the constitutionality of a statute does not constitute a mistake of law); *United States v. Ness*, 652 F.2d 890 (9th Cir. 1981) (same). Thus, given Mary Helen's undisputed right to a refund of its premiums, the analysis in the Trustees' mistake of fact or law cases is inapposite.

3.

Adopting the Trustees' interpretation of the anti-inurement provision would also require us to interpret the anti-inurement provision in a way that would contravene the Supreme Court's analysis in *Eastern Enterprises* and *Phillips*. As discussed above, these cases jointly establish that Mary Helen is entitled to prejudgment interest on the premiums it paid under the Coal Act.

Moreover, the Trustees' interpretation would cast constitutional doubt upon the anti-inurement provision itself. The Coal Act collects premiums on a "pay first, dispute later" basis. *See* 26 U.S.C. § 9706(f)(5). Mary Helen paid its premiums within this framework, notwithstanding its pending, and ultimately valid, constitutional claim. Adopting the Trustees' interpretation of the anti-inurement provision would result in Mary Helen giving the Combined Fund an interest-free loan on unconstitutionally collected premiums; this alone would raise constitutional concerns.

The Trustees' argument, therefore, cannot be correct. This conclusion is buttressed by Title IV's procedure for refunding an employer's payment of liability for withdrawing from an multi-employer benefit plan. Withdrawal liability is another situation in which an employer is required to pay first and dispute later. The Trustees concede that if Mary Helen had overpaid its withdrawal liability, it would be entitled to interest on the amounts refunded. *See Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991); *Huber v. Casablanca Industries, Inc.*, 916 F.2d 85, 100-03 (3d Cir. 1990), *overruled in part on other grounds by Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414 (1995).

The Coal Act states that claims arising out of an obligation to make payments shall be treated "in the same manner as any claim arising

out of an obligation to pay withdrawal liability under [Title IV of ERISA]." 26 U.S.C. § 9721. This treatment is consistent with the fact that both the Coal Act and Title IV impose a pay first, dispute later framework on employers. In *Huber*, the Third Circuit held that when a statute requires payments up-front, the anti-inurement clause cannot, consistent with the constitution, bar an award of prejudgment interest on any amounts later refunded. *See* 916 F.2d at 102. According to the court, "requiring refunds with interest on employer overpayments is necessary to save the [statute's] draconian interim payment procedure from serious constitutional defects." *Id.*

The same is true with respect to Mary Helen's payments under the Coal Act. Given the pay first, dispute later framework, adopting the Trustees' interpretation of the anti-inurement clause would expose "serious constitutional defects" in the application of the provision. As is our duty, we decline to interpret the statute in a manner that gratuitously raises grave constitutional questions. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979).

IV.

At a minimum, Mary Helen is entitled to whatever interest was actually earned on its premiums. Whether it is entitled to more, however, is for the district court to determine in the first instance. There is a dispute about whether Mary Helen's claim to prejudgment interest flows from a damages theory or the compensation theory underlying *Phillips*. We decline to resolve this dispute because the district court should have the first chance to make this determination. Accordingly, the judgment of the district court is reversed and remanded with instructions to calculate the amount of prejudgment interest the Trustees owe Mary Helen.

*REVERSED AND REMANDED*

NIEMEYER, Circuit Judge, concurring:

Part II of the opinion for the court appears to collapse the distinction between (1) *restoring* to Mary Helen Coal its premiums, together with such interest as the Combined Fund may have earned on them,

and (2) *compensating* Mary Helen Coal for damages measured by its loss of use of the money. The doctrine that interest follows principal can be applicable only to the *restoration* basis for recovery. If the Combined Fund earned no interest, then it obviously could not — and would not have to — restore interest to Mary Helen Coal. On the other hand, if we award Mary Helen Coal *compensation* for a constitutional tort, its damages normally would include damage caused to it for the loss of use of money.

In this case, there is some indication that the Combined Fund earned 6% per annum interest on the premiums that Mary Helen Coal paid to the Fund and that Mary Helen Coal's injury for loss of use of its money was 9% per annum. Accordingly, clarity about the theory of award that should apply would seem to be important for determining the ultimate relief in this case.

Since I would find Mary Helen Coal entitled to recovery on either basis, I concur in the court's opinion.