491 F.2d 722
 Robert R. THONEN, Appellee,
v.
Leo W. JENKINS, President of East Carolina University, et
al., Appellants.
William SCHELL, Jr., Appellee,
v.
Leo W. JENKINS, Individually and as President of East
Carolina University and his successors and Robert Morgan,
Individually and as Chairman and Representative of the Board
of Trustees of East Carolina University, Appellants.
 Nos. 72-1601, 72-1602.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1972.
Decided Aug. 2, 1973.
 
 Andrew A. Vanore, Jr., Deputy Atty.Gen., of N.C. (Robert Morgan, Atty.Gen., on brief), for appellants.
 James E. Keenan, Durham, N.C. (Paul, Keenan & Rowan, Durham, N.C., on brief), for appellees.
 Before BOREMAN, Senior Circuit Judge, and CRAVEN and FIELD, Circuit judges.
 PER CURIAM:
 
 
 1
 The defendants, officials of East Carolina University, appeal from an order of the district court expunging the record of disciplinary action taken against plaintiffs, and requiring that, if academically eligible, the plaintiffs be allowed to continue their education at East Carolina University.
 
 
 2
 While students at East Carolina University, Schell wrote a letter that was published in the school newspaper, of which Thonen was editor-in-chief. The letter was critical of parietal regulations and ended with a 'four-letter' vulgarity referring to the president of the university. Disciplinary action was commenced against Thonen and Schell by officials of the university, and subsequently plaintiffs brought this suit in the United States District Court seeking appropriate relief, including readmission to the university to pursue their education.
 
 
 3
 At a plenary hearing below, the district court found: 'No disturbances or disorders or interference in connection with any school or school related function occurred as a result of the printing of the letter . . ..' The district judge reasoned that the sanction imposed upon the students was in violation of the first amendment to the United States Constitution, and accordingly granted a preliminary injunction. We affirm.
 
 
 4
 In Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), the Court made clear first amendment rights on college campuses are coextensive with those in the community at large.[1] Thus, as to speech related activities, a university may legitimately 'enforce reasonable regulations as to the time, place and manner of speech and its dissemination.'[2] 'But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'[3]
 
 
 5
 The record reveals that university officials undertook to deny these college students the right to continue their education because one word in an otherwise unexceptionable letter on a matter of campus interest was deemed offensive to good taste. On at least one prior occasion the officials had remonstrated with the student editors about the use of vulgarity in the publication but had made it clear that they did not intent to act in a censorial fashion nor did they suggest that such vulgarity would not be tolerated in the future. It was only when the vulgarity was used in the open letter addressed to President Jenkins with respect to his dormitory policy that the school authorities viewed it as totally unacceptable and took disciplinary action against Thonen and Schell. That they may not do. The decisions of the Supreme Court make clear 'that the mere dissemination of ideas-no matter how offensive to good taste-on a state university campus may not be shut off in the name alone of 'conventions of decency." Papish, 410 U.S. at 670,93 S.Ct. at 1199, 35 L.Ed.2d at 622.
 
 
 6
 Accordingly, for the reasons stated, the decision of the district court is
 
 
 7
 Affirmed.
 
 
 8
 BOREMAN, Circuit Judge, reserves the right to file a dissenting opinion.
 
 
 
 [1]
 In Healy, the Court stated:
 Yet, the precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.' Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). The college classroom with its surrounding environs is peculiarly the "marketplace of ideas," and we break no new constitutional ground in reaffirming this Nation's dedication to safeguarding academic freedom.
 408 U.S. at 180-181, 92 S.Ct. at 2346.
 
 
 [2]
 Papish v. Board of Curators, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618, 622 (1973). Police Dep't v. Mosley, 408 U.S. 92, 98, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)
 
 
 [3]
 Police Dep't v. Mosley, 408 U.S. at 95, 92 S.Ct. at 2290. Recent decisions of the Court make clear that the published letter is not obscene, Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), is not 'directed to inciting or producing imminent lawless action (or) is likely to incite or produce such action,' Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969); and, is not otherwise unprotected. Papish, 410 U.S. at 670, 93 S.Ct. at 1199, 35 L.Ed.2d at 622. We note that the standards are less stringent, however, in the secondary school setting. Baughman v. Freienmuth, 478 F.2d 1345 (4th Cir., 1973); Quarterman v. Byrd, 453 F.2d 54 (4th Cir. 1971)