Robert R. THONEN and William Schell, Jr., Appellees,

v.

Leo W. JENKINS, President of East Carolina University, et al., Appellants.

No. 74–1841.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1975.

Decided May 29, 1975.

Edwin M. Speas, Jr., Asst. Atty. Gen. of North Carolina (James H. Carson, Jr., Atty. Gen. of North Carolina and Andrew A. Vanore, Jr., Deputy Atty. Gen., of North Carolina, on brief), for appellants.

James E. Keenan, Durham, N. C. (Paul, Keenan & Rowan, Durham, N. C., on brief), for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

In Thonen v. Jenkins, 491 F.2d 722 (4th Cir. 1973) (per curiam), this court affirmed a district court order expunging Thonen's and Schell's academic records of disciplinary actions taken against them by Jenkins and the other defendants because of a letter published in the school newspaper at East Carolina University, and requiring their readmission if academically eligible. Thonen and Schell were subsequently successful in the district court on their prayer for damages and attorney's fees, and defendants again appeal. We affirm the award of attorney's fees but vacate and remand the award of damages for further findings.

## I. *Damages*

The district court awarded nominal damages of $100 to both Thonen and Schell based upon the fact, established by our previous opinion, 491 F.2d 722, that defendants had deprived them of first amendment rights under color of state law. The court held that those were the only elements necessary to a claim for damages under § 1983. This was correct as far as it went. *See* Adickes v. Kress & Co., 398 U.S. 144, 173–74 & n. 44, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

But the Supreme Court has consistently held that public officials sued under § 1983 have a qualified immunity from damages if they acted in good faith. *See* Scheuer v. Rhodes, 416 U.S. 232, 238–49, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Doe v. McMillan, 412 U.S. 306, 318–24, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *cf.* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). And since the district court decision in this case the Supreme Court has set out the elements of the good faith defense for public school officials. Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

The record on appeal does not contain the parties' trial briefs, but the transcript of the hearing below indicates that defendants raised the good faith defense, and they have pressed it on appeal. The district court in its opinion acknowledged defendants' claim of immunity, but made no findings of fact on the issue in its discussion of the damage claim. Its only reference to defendants' *bona fides* came in its earlier discussion of the attorney's fee award, where it stated that "this Court has not concluded that defendants acted in bad faith or with malice." But we decline to interpret that statement, made in another context, as dispositive of the good faith

issue on the damage claim. We are especially unwilling to do so because the appropriate test for these defendants after Wood v. Strickland requires an inquiry into objective as well as subjective good faith, 420 U.S. at 321, 95 S.Ct. 992, and the district court's statement appears to address only subjective good faith.

The district court's decision on the damage claim will be vacated and the cause remanded to enable the court to enter findings as to defendants' good faith under the standards of Wood v. Strickland.

We also note that the district court did not specify whether defendants should pay the damages in their official or their individual capacities. Should the court find that defendants did not act in good faith and that plaintiffs can therefore recover damages, the court should frame its order to run against defendants in their individual capacities only. Damage awards against officials in their official capacities, which are in effect awards against the state, are barred in federal court by the eleventh amendment.[1] *See Scheuer, supra,* 416 U.S. at 237–38, 94 S.Ct. 1683.

## II. *Attorney's Fees*

The district court rested its award of attorney's fees of $3,429.60 on alternative theories. One was that the actions of defendants and their counsel both prior to suit and during litigation brought the case within the "obdurate obstinacy" exception to the general "American Rule" that attorney's fees are not taxed against a losing party absent a statutory provision or contractual obligation for them. *See* F. D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116, 126, 129 & n. 17, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Incarcerated Men of Allen County Jail v. Fair, 507 F.2d 281, 284 (6th Cir. 1974),

and cases there cited; *cf.* Bell v. School Bd. of Powhatan County, 321 F.2d 494, 500 (4th Cir. 1963). The court's second theory was that this suit by Thonen and Schell helped to secure first amendment rights of all university students against similar infringement, and thus helped vindicate the congressional policy against denial of constitutional rights expressed in 42 U.S.C. § 1983. *Cf.* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The court believed that attorney's fees should almost always be awarded in § 1983 cases under this "private attorney general" theory in order to encourage persons to seek redress rather than mutely suffer infringement of their constitutional rights because of the costs of litigation.

We sustain the award of attorney's fees on the ground of "obdurate obstinacy." The court's findings of fact amply support its conclusion that defendants' actions throughout the case were "unreasonable and obdurate and obstinate," and the court was well within its discretion in awarding counsel fees for that reason. Although it found no bad faith or malice on defendants' part, the district court did consider defendants to have been "unreasonable" in disciplining Thonen and Schell for use of language in one letter that had been allowed without incident in others, and in pursuing the disciplinary actions even after it became apparent that the letter had had no disruptive effect on the campus. The court also found that once suit was filed, defendants "continually blocked all avenues of compromise and fully litigated every detail much to the delay and detriment of the plaintiffs," despite a weak case on the merits, and failed on numerous occasions to cooperate with plaintiffs' counsel and the court. The court noted two specific instances of unreasonable litigation tactics: appeal of a consent order entered at defendants' own suggestion; and insistence on an incor-

---

1. The parties have assumed, and so do we, that the college is the state and not a subsidiary governmental unit falling without the protection of the eleventh amendment. *See* Skehan v. Board of Trustees, 501 F.2d 31, 42–43 (3d Cir. 1974).

rect procedural position, with the result that plaintiffs' counsel had to make an unnecessary trip to the chambers of a judge of this court.

Our affirmance on the ground of "obdurate obstinacy" makes it unnecessary to reach the court's second theory, and we express no opinion on it.[2]

As with the damage award, the district court's order on attorney's fees does not reveal in which capacity defendants are liable. We believe the award can be assessed against them in both their individual and their official capacities.

We are aware that the Supreme Court's interpretation of the eleventh amendment in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), has been construed by some courts to preclude an award of attorney's fees against state officials in their official capacities. Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974); Skehan v. Board of Trustees, 501 F.2d 31 (3d Cir. 1974). Relying on Justice Rehnquist's statements that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment," 415 U.S. at 663, 94 S.Ct. at 1356, and that the amendment bars any award which is "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," id. at 668, 94 S.Ct. at 1358, these courts have concluded that "Edelman must be read as closing the door on any money award from a state treasury in any category." Skehan, supra, at 42 n. 7, quoted with approval and emphasis in Jordon, supra, at 709. Since an award of attorney's fees against a state official in his representative capacity would presumably be paid

from state funds, these courts see no way through that closed door.

We decline to read Edelman, which dealt only with retroactive payment of welfare benefits, quite so broadly. Edelman did not purport to overrule Amos v. Sims, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), which affirmed a three-judge court's award of attorney's fees in a § 1983 action against a state governor, attorney general, secretary of state, and state legislators, all in their official capacities. Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972) (per curiam). Although we agree with the courts in Skehan and Jordon that the Supreme Court's summary affirmance of a three-judge court decision is not as strong precedent as a full Supreme Court opinion, see also Edelman, supra, 415 U.S. at 671, 94 S.Ct. 1347, we also agree with the Second Circuit that "the privilege of disregarding even summary Supreme Court holdings rests with the court alone." Doe v. Hodgson, 500 F.2d 1206, 1207–08 (2d Cir. 1974). See also Taylor v. Perini, 503 F.2d 899, 907–08 (6th Cir. 1974) (Edwards, J., dissenting). We believe Amos v. Sims sufficient authority on which to allow this award against defendants as officials. See also Jordon v. Fusari, 496 F.2d 646, 651 (2d Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885, 888 (9th Cir. 1974); Gates v. Collier, 489 F.2d 298, 302–03 (5th Cir. 1973).

Our decision is also supported by Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), in which the Supreme Court awarded costs of litigation directly against the State of Minnesota. Attorney's fees are much more analogous to costs of litigation, which we consider still taxable against a state despite Edelman, see Bos-

2. We do note that this "private attorney general" theory has been recently embraced by several federal courts as grounds for attorney's fee awards in § 1983 suits. E. g., Incarcerated Men of Allen County Jail v. Fair, 507 F.2d 281, 284–85 (6th Cir. 1974); Taylor v. Perini, 503 F.2d 899, 905 (6th Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885, 888–89 (9th Cir.

1974); Sims v. Amos, 340 F.Supp. 691, 694–95 (M.D.Ala.) (three-judge court) (per curiam), aff'd mem., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). See generally Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U.Pa.L.Rev. 636, 655–81 (1974).

ton chapter of N.A.A.C.P., Inc. v. Beecher, 504 F.2d 1017, 1028–29 (1st Cir. 1974) (per curiam), than they are to an award of damages or retroactive benefits, which now appear unavailable against a state on private suit. *Cf.* Class v. Norton, 505 F.2d 123, 126 (2d Cir. 1974). *But see Jordon, supra,* at 705.

### III. *Conclusion*

The award of damages is vacated and remanded for findings on the issue of defendants' good faith, and entry of an award, if any, against them in their individual capacities. The award of attorney's fees is affirmed. On remand, the district court may enter judgment as to attorney's fees against the defendants in their individual or official capacities, or both.

Affirmed in part; vacated in part; and remanded.