**GILBERT IMPORTED HARDWOODS, INC., Plaintiff,**

v.

**Michael H. HOLLAND, Marty D. Hudson, Elliot A. Segal, Thomas O.S. Rand, William P. Hobgood, Carl Van Horn, and Gail R. Wilensky, as Trustees of the United Mine Workers of America Combined Benefit Fund, Defendants.**

No. 2:00–0030.

United States District Court, S.D. West Virginia, at Charleston.

Sept. 21, 2001.

---

**15.** The point is relevant to Canal since, as already noted, Canal "stands in the shoes" of DSI with respect to reimbursement.

Forrest H. Roles, Esquire, Anna M. Dailey, Esquire, Heenan, Althen & Roles, Charleston, WV, John R. Woodrum, Meikka A. Cutlip, W. Gregory Mott, Heenan, Althen & Roles, Washington, DC, for Gilbert Imported Hardwoods, plaintiff.

David W. Allen, Larry D. Newsome, Jonathan Sokolow, UMWA Health & Retirement Funds, Office of General Counsel, Washington, DC, Gary A. Collias, McIntyre & Collias, Charleston, WV, for Michael H. Holland, Marty D. Hudson, Elliot A. Segal, Thomas O.S. Rand, William P. Hobgood, Carl Van Horn, and Gail R. Wilensky, as Trustees of the United Mine Workers of America Combined Benefit Fund, defendants.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the following motions: plaintiff's motion for summary judgment, filed April 3, 2000; plaintiff's motion to dismiss defendants' counterclaim, filed April 7, 2000; plaintiff's renewed motion for summary judgment, filed October 23, 2000; plaintiff's renewed motion to dismiss defendants' counterclaim, filed October 23, 2000; and defendants' motion for summary judgment, filed November 3, 2000.[1]

### I. Procedural Background

Beginning in 1993, the Commissioner of the Social Security Administration ("SSA") assigned to Gilbert Imported Hardwoods,

---

1. On November 3, 2000, defendants concurrently with their motion for summary judgment, filed a motion for leave to exceed the page limitation set forth in Local Rule of Civil Procedure 4.01. The defendants, having filed their motion for summary judgment with a supporting memorandum twenty-nine pages in length, and the plaintiff having filed a re-

Inc. ("Gilbert") twenty retired mine workers who had been employed by Jumacris Mining Company ("Jumacris") and their dependents, accounting for a total of 41 beneficiaries, on the theory that Gilbert was a "related person" to Jumacris as that term is defined by the Coal Industry Retiree Health Benefit Act of 1992,[2] 26 U.S.C. §§ 9701–9722 (1994 ed. and Supp. II) ("Coal Act"). (Plaintiff's Proposed Stipulated Fact No. 2, Accepted by defendants in Amendment to Pretrial Order; Attachment 1, Pl.'s Compl.). Although it disagreed with the assignment, Gilbert paid into the United Mine Workers of America Combined Fund ("Combined Fund"),[3] as required by the Coal Act,[4] the assessed premiums while it challenged the assignment. (Aff. of John B. Earles, Human Resources Manager Gilbert, p. 2, attached as Exhibit 1, Plaintiff's Mot. Sum. Judge.) Between the years 1993 through 1999, Gilbert paid the Combined Fund approximately $800,000 in premiums for these twenty retirees and their beneficiaries. (*Id.*)

Gilbert filed suit against the Commissioner of the SSA in the United States District Court for the Southern District of West Virginia at Huntington, on May 14, 1998, challenging the Commissioner's assertion that Gilbert was a "related person" to Jumacris within the meaning of the Coal Act. (Plaintiff's Proposed Stipulated Fact No. 3, Accepted by defendants in Amendment to Pretrial Order). The SSA agreed to withdraw its assignment of the Jumacris beneficiaries to Gilbert, and the case was

dismissed by order entered May 3, 1999, based upon an April 29, 1999, "Stipulation and Settlement Agreement" ("Settlement Agreement") submitted jointly by the parties. (Plaintiff's Proposed Stipulated Fact No. 4, Accepted by defendants in Amendment to Pretrial Order). The Settlement Agreement provides that "Defendant agrees that the beneficiaries listed in Appendix A [the 41 Jumacris beneficiaries] will not be assigned now, or at any time in the future, to Plaintiff." (Settlement Agreement, attached as Exhibit 2, Counterclaim.) The SSA, by correspondence dated May 25, 1999, notified counsel for Gilbert that "pursuant to the April 29, 1999[sic], United States District Court Order approving the 'Stipulation and Settlement Agreement' in *Gilbert Imported Hardwood, Inc., v. Apfel,* the assignments made to Gilbert, based upon a purported related-party status with Jumacris Mining, Inc., are withdrawn." (May 25, 1999, Correspondence from O'Connel, Attachment 1, Pl.'s Complaint.)

After the SSA withdrew its assignment of the 41 Jumacris beneficiaries, Gilbert retained responsibility under the Coal Act for the premiums of another twenty-seven beneficiaries, later reduced to twenty-five. (Aff. of John B. Earles, Human Resources Manager Gilbert, p. 2, attached as Exhibit 1, Plaintiff's Mot. Sum. Judge.). Gilbert's health and death premiums for these twenty-five beneficiaries for the 1999–2000 plan year was $72,205.98. (*Id.* at p. 3.)[5]

When Gilbert sought a refund of the approximately $800,000 in premiums it had

---

sponse to the motion for summary judgment, and having suffered no apparent prejudice by the length of the defendants' memorandum, it is ORDERED that defendants' motion to exceed page limitation be, and it hereby is, granted.

**2.** *See infra* pp. 574–75 for a brief description of the Coal Act.

**3.** The Combined Fund is a health benefits fund for retired coal workers created by the Coal Act and maintained by the seven defendants, as trustees. *See infra* p. 574–75.

**4.** *See* 26 U.S.C. § 9706(f)(5); *See infra* p. 575.

**5.** The annual premiums were apparently reduced at some point to $68,860.86. (Aff. of

paid on behalf of the formerly assigned Jumacris retirees, the Combined Fund refused to refund the payment, maintaining that it was permitted statutorily to apply the $800,000 as an offset to Gilbert's future payments to the Combined Fund. (Plaintiff's Proposed Stipulated Facts Nos. 6–7, Accepted by defendants in Amendment to Pretrial Order). Gilbert estimates that it will take more than ten years to utilize the $800,000 as a credit for future premiums. (Attachment A to Complaint, Correspondence to the Administrators of Combined Fund at 1). According to the defendants, as of the end of the 2001 plan year, Gilbert's credit with the Combined Fund will be $550,201.19. (Proposed Pretrial Order, p. 13.)

Gilbert filed this civil action on January 11, 2000, asserting that both the plain language of the Coal Act and the common law doctrine of restitution require the Combined Fund to return all premiums paid on behalf of the Jumacris retirees, plus prejudgment interest, costs and attorney fees. (Pl. Compl. at ¶ 7.)

The Combined Fund filed a counterclaim on March 16, 2000, asserting that Gilbert wilfully withheld material information from the SSA, leading the SSA to withdraw its assignment of the Jumacris retirees and enter into the April 29, 1999, settlement agreement with Gilbert. (Counterclaim at ¶ 24) The Combined Fund alleges that it is entitled to the issuance of "[a] preliminary injunction directing Gilbert to provide the Commissioner of Social Security with a complete accounting of the business activities or any other activities of Jumacris Mining, including an unedited set of its consolidated federal income tax returns . . . and further directing Gilbert to provide SSA with all documentation that reasonably relates to such activity and such other information as SSA reasonably requests." (*Id.* at Prayer for Relief.) The Trustees further seek a stay of proceedings in the plaintiff's action pending the Commissioner's review of the documents and information provided by Gilbert.

Gilbert filed a motion to dismiss the Trustees' counterclaim on April 7, 2000, arguing that the Trustees lack standing to bring the counterclaim and that the counterclaim fails to state a claim upon which relief can be granted. Plaintiff and defendants filed cross-motions for summary judgment, with each side asserting that resolution of the case in its favor is appropriate. Plaintiff later filed a supplement to its motion to dismiss and its motion for summary judgment.

## II. Plaintiff's Motion to Dismiss Counterclaim

The defendants [6] assert in their counterclaim that the SSA's decision to withdraw the assignment of beneficiaries to Gilbert was made in error, based upon Gilbert's failure to provide SSA with certain pertinent documents within its control. (Counterclaim at ¶ 21–23.) According to defendants, Gilbert failed to produce "most of the consolidated federal income tax returns of the [sic] Gilbert and its subsidiaries," which tax returns "documented the fact that the Gilbert Companies claimed business expenses attributable to Jumacris in 1983 and 1984." (*Id.* at ¶ 20.) The defendants claim that this "wrongful and willful withholding of factual information and documentary evidence from SSA wrongfully caused SSA to void the assignments of the Jumacris Retirees." (*Id.* at ¶ 24.) The defendants seek a preliminary

---

John B. Earles, Human Resources Manager Gilbert, p. 2, attached as Exhibit 1, Plaintiff's Mot. Sum. Judge.).

6. The court will refer to the defendants, who are also counterclaimants, as either "defendants" or "Trustees."

injunction "directing Gilbert to provide the Commissioner of the Social Security Administration with a complete accounting of the business activities or any other activities of Jumacris Mining, Inc. from 1982 to 1985, including an unedited set of its consolidated federal income tax returns for 1983, 1984, and 1985," and, as noted above, further directing Gilbert to provide SSA with all documentation that reasonably relates to such activity and such other information as SSA reasonably requests. (*Id.* at Prayer for Relief.)

In its motion to dismiss, the plaintiff seeks dismissal of the counterclaim under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.

### 1. *Rule 12(b)(1)*

■ The plaintiff contends that defendants lack the authority to review the SSA's decision to withdraw an assignment of beneficiaries to Gilbert and therefore have no legal standing to seek an order compelling Gilbert to produce documents to SSA, depriving the court of subject matter jurisdiction over the counterclaim and rendering the counterclaim incognizable. (Pl.'s Mem. In Suppt. Mot. Dismiss at 3–5.) It is the plaintiff's contention that only the SSA would have standing to seek the type of injunctive relief described in the defendants' counterclaim. (*Id.*)

In response, defendants maintain that they suffered harm when "Gilbert procured the voiding of the Jumacris assignments by withholding factual information and documents." (Defs.' Resp. at 5.) They contend that the relief they seek from their counterclaim is not a reversal of the SSA's decision to withdraw its assignment of beneficiaries, but merely an order that "Gilbert ... provide the information to SSA that it should have provided at an earlier date." (*Id.*) The defendants assert that they have standing to seek this relief which is "narrowly tailored to remedy the wrong alleged in the counterclaim." (*Id.*)

It is well settled that a federal court has no subject matter jurisdiction over a case or controversy in which the litigant lacks legal standing. *See, e.g., FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *Society Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 175 (3d Cir.2000).

In considering the standing issue, the court must first examine the relationship between SSA and the defendants pursuant to the Coal Act. Briefly, Congress passed the 1992 Coal Act in an effort to "identify persons most responsible for plan liabilities in order to stabilize plan funding and allow for the provision of health care benefits to [coal industry]... retirees." Pub.L. No. 102–486, § 19412(a)(2), 106 Stat. 2776, 3037 (codified at 26 U.S.C. § 9701 note (1994)). In accord with this goal, the Coal Act established two new funds for the provision of health care benefits to coal industry retirees and their families. The Coal Act collapsed two pre-existing benefit plans, the 1950 and 1974 United Mine Workers Association ("UMWA") Benefit Plans, into the Combined Fund, the trustees of which are the defendants herein, so as to continue to provide benefits to retirees [7] who, as of

---

7. An "eligible beneficiary" under the Combined Fund is an individual who:

 (1) is a coal industry retiree who, on July 20, 1992, was eligible to receive, and re-

ceiving, benefits from the 1950 UMWA Benefit Plan or the 1974 UMWA Benefit Plan, or

July 20, 1992, were receiving benefits from either of the two previous plans, with premiums paid by "signatory operators"[8] and "related persons."[9] 26 U.S.C. § 9701(c)(2); § 9702; § 9703(f). The Combined Fund is a multiemployer plan subject to ERISA. 26 U.S.C. § 9702(a)(3)(C).[10]

The Combined Fund is financed by annual per-beneficiary premiums[11] paid by operators designated by the SSA on the basis of the beneficiary's work history in mining. 26 U.S.C. § 9706(a). A seven-member board of trustees, the defendants herein, maintain the Combined Fund. *See* 26 U.S.C. § 9702(b); 9704(e). Once the SSA makes an assignment of beneficiaries, even if the assignment is challenged, the operator is required to make premium payments to the Combined Fund pending the outcome of an appeal of the assignment. 26 U.S.C. § 9706(f)(5) ("Payment pending review.—An assigned operator shall pay the premiums under section 9704 pending review by the Commissioner of Social Security or by a court under this subsection."). An assigned operator who fails to make timely payment benefits as required under the provisions of the Coal Act is subject to a fine in the amount of $100 per day. 26 U.S.C. § 9707. An assigned operator is entitled to seek the SSA's reconsideration of an assignment and to file a private civil action to challenge the assignment. 26 U.S.C. § 9706(f).

Gilbert utilized both the reconsideration provision as well as the civil action provision of the Coal Act to challenge the SSA's assignment of the Jumacris retirees. It is Gilbert's position that defendants, who were not parties to the previous civil action challenging the assignment of the Jumacris retirees and having no authority to make, review, or withdraw assignments, have no legal standing to seek an order requiring that Gilbert provide certain documents to SSA.

■■■ Legal standing to assert a claim is premised upon Article III of the United States Constitution which limits the power of the judicial branch of the government. *See* Const. Art. 3, § 1. " 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.' " *ASARCO Inc. v. Kadish,* 490 U.S.

---

(2) on such date was eligible to receive, and receiving, benefits in either such plan by reason of a relationship to such retiree. 26 U.S.C. § 9703(f).

8. The term "signatory operator" means a person which is or was a signatory to a coal wage agreement. 26 U.S.C. § 9701(c)(1).

9. A "related person" is defined as follows:
 (A) In general.—A person shall be considered to be a related person to a signatory operator if that person is—
 (i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator;
 (ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or
 (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.
 A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).
 26 U.S.C. § 9701(c)(2).

10. The second fund, which is not at issue, is the 1992 United Mine Workers Benefit Plan that provides benefits for retirees who were eligible for, but not receiving, benefits from the 1950 or 1974 UMWA Benefit Plans or an individual employer plan. 26 U.S.C. § 9711.

11. Plan years run from October 1 to September 30. 26 U.S.C. § 9702(c).

605, 612, 109 S.Ct. 2037, 104 L.Ed.2d 696 (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343, (1975)). Proper standing requires that a plaintiff assert a direct injury that can be traced to the defendant's conduct and from which relief to the plaintiff will likely follow from a favorable adjudication to the plaintiff. *See, e.g., ASARCO Inc.,* 490 U.S. at 611–13, 109 S.Ct. 2037; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)(noting that "[t]he federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.' ") (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)).

While the defendants, as trustees of the Combined Fund, collect and manage payments made pursuant to SSA assignments, they are not statutorily empowered to make or reconsider assignments of beneficiaries. *See* 26 U.S.C. § 9706(a)-(f). This power lies exclusively with the SSA. *See id.* Thus, even taking as true the defendants' assertion that the Jumacris premiums are "properly the responsibility of Gilbert because Gilbert's wrongful and willful withholding of factual information and documentary evidence from SSA wrongfully caused SSA to void the assignments of the Jumacris Retirees," the alleged fraud of withholding documents and evidence was perpetrated upon SSA. Only the SSA would be capable of demonstrating that the alleged withholding of information resulted in an erroneous decision to withdraw the Jumacris beneficiaries. Thus, only the SSA can establish the type of direct injury contemplated by Article III of the United States Constitution.

Moreover, even if the Trustees could meet the direct injury requirement, they cannot establish that the relief they seek in their counterclaim is likely to redress such injury. The Trustees ultimately seek to have the SSA review additional documents and reconsider its withdrawal of the assignment of the Jumacris retirees from Gilbert. (Counterclaim at Prayer Relief) Whether the SSA would review the additional documents, reconsider its decision, and attempt to reassign the Jumacris retirees to Gilbert (in violation of the Settlement Agreement) is unknown. The court will not speculate as to the reaction of the SSA, a non-party to this civil action, to an order that Gilbert provide it with certain documents. *See, e.g., Burton v. Central Interstate Low–Level Radioactive Waste Compact Comm'n,* 23 F.3d 208, 209–10 (8th Cir.1994) *cert. denied* 513 U.S. 951, 115 S.Ct. 366, 130 L.Ed.2d 318 (1994) (consumer of electric power cannot show likelihood of redressability of injury where consumer sues commission which taxes power company seeking a reduction in the taxes to power company on theory that power company will offer corresponding lower rates to consumer, and court declines to speculate as to reaction of power company to reduced rates where power company is not a party to the suit).

Accordingly, the defendants cannot establish either (1) the type of direct injury necessary for standing under Article III, nor (2) the likelihood of redress of such injury by a favorable adjudication, making dismissal appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2. *Rule 12(b)(6)*

■ In considering the plaintiff's motion to dismiss insofar as based upon Rule 12(b)(6) for failure to state a claim, the court must determine whether the complaint, accepting the allegations as true, allows a recovery. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994);

*Hospital Building Co. v. Rex Hospital Trustees,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Waterford v. Citizens' Assoc. v. Reilly,* 970 F.2d 1287, 1290 (4th Cir.1992). Such motions "should be granted only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). A Rule 12(b)(6) motion requires the court to accept the factual allegations in the complaint and construe them in the light most favorable to the non-moving party. *E.g., Mylan Laboratories Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). Rule 12(b)(6) motions should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991) (*quoting Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456, 457 (4th Cir.1983)).

The plaintiff argues that the Trustees, who were not parties to the earlier civil action but now seek to alter its results, do not state claims cognizable under the Coal Act or any other legal authority. (*Id.*) According to the plaintiff, "even if the withdrawal of assignments had been obtained through misrepresentations, the Trustees' only available response to such suspicions of misconduct would be to take their concerns to the Commissioner and invite the Commissioner to reconsider his May 1999, decision to withdraw the Jumacris Retiree assignments." (*Id.* at p. 6, n. 3.)

The plaintiff's argument has merit. The Trustees request the unusual relief of a court order that the plaintiff supply certain documents to a non-party in order that the non-party can reconsider its earlier decision to withdraw beneficiary assignments. The Trustees were not parties to the earlier civil action, nor are they empowered to alter or challenge the SSA's decisions. There exists no set of facts or circumstances in this case upon which the court might grant to the Trustees the relief which they ultimately seek, a reassignment of the Jumacris beneficiaries to Gilbert.

Moreover, while not expressly raised by the plaintiff, it appears that the type of relief the defendants seek in their counterclaim, essentially a reopening of discovery in another civil action, is akin to a motion for relief from final order pursuant to Rule 60 of the Federal Rules of Civil Procedure. Such a motion is only properly made by a party to the action, and to the court that entered the final order. *See* Fed. R. Civ. P 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding...."). It appears, therefore, that the Trustees' counterclaim seeking to revive issues resolved in a separate civil action pending before another court and to which the Trustees were not parties, is not legally cognizable. Accordingly, in addition to Federal Rule of Civil Procedure 12(b)(1), the plaintiff's motion to dismiss is also appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[12]

**12.** In its renewed motion to dismiss, plaintiff asserts that the issues raised in defendants' counterclaim are moot, the defendants having received the very relief sought in the counterclaim. Plaintiff alleges that during discovery, it provided the defendants with the documentation and information that defendants' wished for SSA to review. (Renewed Mot. Dismiss at 2.) The defendants passed along the new documentation to the SSA for further consideration. (*Id.*) As an exhibit to the supplemental motion to dismiss, plaintiff offers the correspondence of Eileen A. Farmer, counsel for SSA, to Jonathan Sokolow, counsel for the defendants, stating "[a]fter careful consideration of the evidence presented, the Agency has decided not to revise its position." (September 28, 2000, Farmer Correspondence, attached as Exhibit 1, Pl.'s Supp. Mot.

### III. Cross Motions for Summary Judgment

The parties' cross motions for summary judgment are governed by Federal Rule of Civil Procedure 56. In general, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed.R.Civ.P. 56(c); *Id.* at 322–23, 106 S.Ct. 2548. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party.

*Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991).

Where the plaintiff is the moving party, plaintiff bears both the burden of persuasion and the burden of production in its motion for summary judgment, and must establish that there is an absence of a genuine issue of material fact as to whether the defendants are liable. *E.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 11 James Wm. Moore, Moore's Federal Practice § 56.13[1] (3d ed. 1998) ("If the movant is also the party bearing the ultimate burden of persuasion with regard to a claim, its initial summary judgment burden is somewhat higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.")

■■■ Both plaintiff and defendants assert that the plain language of the Coal Act supports their respective positions. The parties do not dispute that Gilbert paid to defendants a "significant sum" of money, estimated by the plaintiff to be $800,000, with respect to the SSA's original assignment of certain beneficiaries to Gilbert. (Pl.'s Compl. ¶ 15; Defs.'s Ans. ¶ 15.) The principal area of dispute lies in the parties' respective interpretations of 26 U.S.C. § 9706(f)(3)(A)(i) which provides for a reduction in premiums or a refund, stating:

> (A) Error.—If the Commissioner of Social Security determines under a review

---

Dismiss.) Plaintiff argues that this correspondence evidences the mootness of the issues raised in defendants' counterclaim.

In response, defendants maintain that the court should limit its consideration, upon a motion to dismiss, to the contents of the counterclaim and should not consider the contents of the correspondence. (Defs.' Resp. at 2.) Defendants also allege that the SSA, by this

correspondence, has demonstrated its willingness to review any additional relevant evidence arising from this action. (*Id.*)

The court, having determined that dismissal of the counterclaim is appropriate on other grounds, need not reach the issue of mootness raised in plaintiff's supplemental motion to dismiss. The court will dismiss as moot the plaintiff's renewed motion to dismiss.

under paragraph (2) that an assignment was in error—

(i) the Commissioner shall notify the assigned operator and the trustees of the Combined Fund and the trustees shall reduce the premiums of the operator under section 9704 by (or if there are no such premiums, repay) all premiums paid under section 9704 with respect to the eligible beneficiary, and

(ii) the Commissioner shall review the beneficiary's record for reassignment under subsection (a).

*Id.*

The plaintiff contends that the premiums to be reduced pursuant to section (A)(i) are only those premiums that are delinquent. (Pl.'s Mem. in Suppt. Mot. Sum. Judge. at 11–13.) Under the plaintiff's reading of the statute, even if an operator has other assigned beneficiaries on whose behalf it will make payments in the future, the operator is entitled to a full refund insofar as it is not delinquent on its payment of premiums. The defendants offer a contrary interpretation, contending that the statute requires that any premiums owed now or in the future be reduced, by means of a credit, until either the overpayment is repaid or there are no more owed premiums.

■ In construing the meaning of a statute, it is fundamental that the court must first examine the statute's plain language to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). *See also Holland v. Big River Minerals Corp.*, 181 F.3d 597 (4th Cir.1999). The court is to determine whether a statute is plain and unambiguous by considering "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341, 117 S.Ct. 843. "If the language is plain and 'the statutory scheme is coherent and consistent,' [the court] ... need not inquire further." *Holland*, 181 F.3d at 603 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). *See also Rosmer v. Pfizer Inc.*, 263 F.3d 110 (4th Cir.2001); *United States v. Photogrammetric Data Services, Inc.*, 259 F.3d 229, 247 (4th Cir.2001).

The key to resolving the parties' disparate interpretations of section 9706(f)(3)(A)(i) of the Coal Act lies in ascertaining the meaning of the phrase "the premiums of the operator under section 9704." The "premiums" referred to in this provision are, according to the plain language of the statute, the same as those "premiums" described in section 9704. *See* 26 U.S.C. § 9706(f)(3)(A)(i). Section 9704, in turn, entitled "Liability of Assigned Operator" describes the means by which the SSA calculates an operator's premiums. The only premiums referred to in section 9704 are "annual premiums." [13] *See* 26 U.S.C. § 9704(a)(entitled "annual premiums"). Pursuant to section 9704, the SSA is to assess premiums each

---

13. Section 9704(a) provides:

(a) Annual premiums.—Each assigned operator shall pay to the Combined Fund for each plan year beginning on or after February 1, 1993, an annual premium equal to the sum of the following three premiums—

(1) the health benefit premium determined under subsection (b) for such plan year, plus

(2) the death benefit premium determined under subsection (c) for such plan year, plus

(3) the unassigned beneficiaries premium determined under subsection (d) for such plan year.

Any related person with respect to an assigned operator shall be jointly and severally liable for any premium required to be paid by such operator.

plan year, based upon a prescribed formula, which premiums are to be paid by the assigned operator into the Combined Fund in twelve equal monthly installments. *See* 26 U.S.C. § 9704(a),(g),(h).

Premiums may vary from year to year. Thus an operator's premiums for future years cannot be precisely ascertained in advance. *See, e.g., In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 580 n. 9 (4th Cir. 1996) *cert denied,* 520 U.S. 1118, 117 S.Ct. 1251, 137 L.Ed.2d 332 (1997)(stating that future liability of Chapter 11 debtor coal company under the Coal Act cannot be precisely stated). Section 9704 contains a "shortfalls and surpluses" provision whereby the following year's premiums are either reduced or assessed by any excess or surplus in the current plan year. 26 U.S.C. § 9704(e)(3)(A).[14]

Inasmuch as the term "premiums" as used in section 9704 relates exclusively to annual premiums assessed each plan year, which premiums may vary from year to year, it appears that there are no premiums for an operator until such time as the SSA designates that operator's premium for a particular plan year. *See, e.g., In re Leckie,* 99 F.3d at 580 n. 9 (in a failed attempt to impose liability for Coal Act premiums upon the purchasers of coal companies' assets, the Trustees argued that liability for future Coal Act premiums does not yet exist, having not yet been assessed). These annual premiums cannot be definitively ascertained for the future, and are not owed until assessed. *See id.;* 26 U.S.C. § 9704(a),(g). The court concludes that future Coal Act premiums do not currently exist and are not contemplated by the phrase "the premiums of the operator under Section 9704."

The court finds significant the use of the present tense, "are," in section 9706. Giving the word "are" its plain meaning, the parenthetical phrase "or if there are no such premiums, repay" refers to premiums that exist in the present. *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (construing statutory clause "unless he is in imminent danger of serious physical injury" to be "cast in the present tense" as result of the word "is"); *Fazi v. Commr. Internal Revenue,* 102 T.C. 695, 711, 1994 WL 193846 (1994) ("The statutory phrases being interpreted in these cases are stated in the present tense by use of the word 'is.' "). Pursuant to the parenthetical phrase "or if there are no such premiums, repay," the Trustees must repay premiums for erroneously assigned beneficiaries unless there are presently existing premiums. As discussed above, inasmuch as the only premiums that currently exist pursuant to section 9704 are those that have been assessed by SSA for the plan year, the court concludes that the plain language of section 9706 requires the Trustees to repay erroneously paid premiums less any amount of premiums currently assessed.[15]

---

**14.** This section provides:

 (3) Shortfalls and surpluses.—
 (A) In general.—Except as provided in subparagraph (B), if, for any plan year, there is a shortfall or surplus in any premium account, the premium for the following plan year for each assigned operator shall be proportionately reduced or increased, whichever is applicable, by the amount of such shortfall or surplus.
 26 U.S.C. § 9704(e)(3)(A).

**15.** The court does not find support for either the plaintiff's position that "premiums" in section 9706 refers only to delinquent premiums or the defendants' contention that "premiums" encompasses future premiums. Had either of these meanings been intended, Congress could easily have so stated with modifying language such as "delinquent" or "future." The court's interpretation of "premiums" as limited to the current assessed annual premiums is also consistent with the "Shortfall and surplus" section of the Act, which refers to premiums in terms of their annual aggregation and appears to limit a set-off to the year following an overpayment. *See* 26 U.S.C. § 9706(f)(3)(A).

Because the language of section 9706(f)(3)(A)(i) is found to be plain and unambiguous, the court need not proceed further to ascertain its meaning.[16] Pursuant to section 9706(f), if the SSA determines that an assignment of beneficiaries was made in error, the Trustees are obligated to reduce the premiums owed during the current plan year by the amount of any premiums paid for an erroneously assigned beneficiary and refund any excess, or if there are no annual premiums assessed, the Trustees must provide a full refund of the premiums paid for erroneously assigned beneficiaries. *See* 26 U.S.C. § 9706(f)(3)(A).

■ Moreover, while the court finds the meaning of section 9706 to be plain and unambiguous, warranting no further inquiry, the court notes nonetheless that it would be bound to interpret the statute, if unclear, in a way that would avoid potentially absurd results. *See, e.g., Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). *See also United States v. X-Citement Video, Inc.,* 513 U.S. 64, 68–69, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (rejecting the "most natural grammatical reading" of a statute to avoid "absurd" results). Absurd results are those which are "so gross as to shock the general moral or common sense." *Hillman v. In-*

*ternal Revenue Serv.,* 263 F.3d 338, 342 (4th Cir.2001) (quoting *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 304 (4th Cir.2000)).

The Trustees' proffered interpretation of section 9706, enabling the Combined Fund to obtain a long-term, interest-free loan based upon an assignment which has been determined by the SSA to be erroneous, encroaches upon the realm of the absurd. 26 U.S.C. § 9706(a)(i). As the plaintiff also aptly points out, once the SSA withdraws an assignment of beneficiaries, it is entitled to reassign the beneficiaries to a new operator and assess annual premiums, leading to the possibility of the inclusion of double premiums in the Combined Fund for the same beneficiaries. (Pl.'s Mem. in Suppt. Mot. Sum. Judge. at 14–16.) *See* 26 U.S.C. § 9706(a)(ii) (after determining an assignment is made in err, "the Commissioner shall review the beneficiary's record for reassignment under subsection (a)"). Even assuming, *arguendo,* the language of section 9706 to be ambiguous, the court would be expected to construe it in a manner and sense consistent with the reasonable interpretation adopted above so as to avoid highly unjust and potentially oppressive results. *See, e.g., Griffin,* 458 U.S. at 575, 102 S.Ct. 3245.

Applying the plain language of section 9706(f), it is apparent that the defendants were permitted to reduce the premiums paid under section 9704 for the Jumacris retirees by the amount of the then current plan year's (October 1, 1998 through September 30, 1999) annual assessed premium

---

**16.** Inasmuch as the court has determined that section 9706(f)(3) is not ambiguous, the court need not consider the Trustees' contention that the legislative history of the Coal Act supports their interpretation of Section 9706. The Trustees point out that the Coal Act was enacted in an attempt to remedy a longstanding funding crisis in the UMWA benefit plan. (Defs.' Mem. In Suppt. Mot. Sum. Judge. at 26–27.) The Trustees then proceed to argue, unpersuasively, that Congress intended for the Trustees to retain erroneously paid premiums and offset them against future premium obligations. Speculating, they claim that "Congress could well have reasoned that since the operators' premium liability would continue for many years it was appropriate, in order to secure long term financial solvency of the combined fund, to minimize the chance that operators would grab a refund then fail to make future payments." (*Id.*)

for Gilbert's remaining assigned beneficiaries. No other year's premium having been ascertainable at that time, the Trustees were obligated to return the surplus.

### IV. Prejudgment Interest, Costs and Attorney Fees

■■■ Having determined the plaintiff is entitled to recover the amount of its premiums paid for the Jumacris beneficiaries less the amount of its current plan year's premiums, the court next addresses the plaintiff's contention that it is entitled to an award of prejudgment interest, costs, and attorney fees. The plaintiff seeks prejudgment interest "from the date the Trustees ... withdr[ew] its assignment of the Jumacris Retirees to Gilbert," [17] arguing that the Fourth Circuit case of *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207 (4th Cir.2000) offers support for its entitlement to interest on refunds. (Pl.'s Mem. in Suppt. Mot. Sum. Judge. at 17.)

In the case of *Mary Helen Coal Corp. v. Hudson*, 57 F.Supp.2d 318 (E.D.Va.1999), the United States District Court for the Eastern District of Virginia applied the United States Supreme Court's recently issued opinion of *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), to conclude that while plaintiff was entitled to an award of premiums determined to be unconstitutional by the Supreme Court, it was not entitled to prejudgment interest on the premiums. *Id.* at 321, 118 S.Ct. 2131. The court based its decision on the absence of any statutory provision for interest as well as the anti-inurement policy of ERISA, which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries...." *See* 29 U.S.C. § 1103(c)(1). On appeal, the Fourth Circuit reversed the district court's decision, finding inapplicable the anti-inurement provision. 235 F.3d 207, 210–13. The Fourth Circuit, reciting the "usual rule that 'interest follows principal,'" reasoned that plaintiff was "presumptively entitled to an award of prejudgment interest." *Id.* at 210 (quoting *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998)). The Fourth Circuit rejected the district court's reliance upon the anti-inurement provision, finding the statute inapplicable to plaintiff, who was not an "employer" under ERISA and finding that the premium paid was collected unconstitutionally and thus never became fund "assets" as contemplated in the anti-inurement provision. *Id.* at 211. The court noted that acceptance of the Trustees' proffered interpretation of the anti-inurement provision would result in "giving the Combined fund an interest-free loan on unconstitutionally collected premiums" and would "cast constitutional doubt upon the anti-inurement provision itself." *Id.* at 213. The court remanded to the district court for a determination of the appropriate amount of prejudgment interest. *Id.* at 214. The court declined to determine whether the plaintiff's entitlement to prejudgment interest flowed from a damages theory, entitling the plaintiff to actual interest earned by the Combined Fund, or a compensation theory, warranting an award for the plaintiff's lost use of the funds. *Id.* at 214 (citing *Phillips*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174). The court did conclude that "[a]t a minimum, Mary

---

17. In the same memorandum of the law, the plaintiff also asserts that it is entitled to prejudgment interest from the date the Jumacris premiums became its property, "at least from the date SSA officially withdrew the Jumacris Retiree assignments," which date could presumably be different than the date the Combined Fund was notified of the withdrawal. (Pl.'s Mem. in Suppt. Mot. sum. Judge. at 21.)

Helen is entitled to whatever interest was actually earned on its premiums." *Id.*

Judge Niemeyer, noting concern that the court collapsed the distinction between restoration and compensation damages, concurred in the judgment and offered a distinction between the two. *Id.* at 214 (Niemeyer, J. concurring). According to the concurring opinion:

> The doctrine that interest follows principal can be applicable only to the restoration basis for recovery. If the Combined Fund earned no interest, then it obviously could not—and would not have to—restore interest to Mary Helen Coal. On the other hand, if we award Mary Helen Coal compensation for a constitutional tort, its damages normally would include damage caused to it for the loss of use of money.

*Id.*

The Trustees maintain that, unlike the scenario in *Mary Helen,* ERISA's anti-inurement provision applies to bar Gilbert from recovery of prejudgment interest. According to the Trustees, Gilbert, who is still responsible for paying Coal Act premiums for assigned beneficiaries, is, as distinguished from Mary Helen, an "employer" subject to the anti-inurement provision. Moreover, according to the Trustees, the premiums for the assigned Jumacris retirees, collected in accord with the Coal Act, properly became a part of the Combined Fund's assets. (Defs.' Res. Pl.'s Notice of Recent Development at 2–3.)

█ The court does not find compelling defendants' proffered distinctions from the *Mary Helen* case. The purpose of prejudgment interest is to make whole an injured party. *See, e.g., Osterneck v. Ernst & Whitney,* 489 U.S. 169, 174, 109

S.Ct. 987, 103 L.Ed.2d 146 (1989) ("prejudgment interest traditionally has been considered part of the compensation due plaintiff"). Whether the Trustees collected premiums in violation of the United States Constitution, as was the case in *Mary Helen,* or withheld premiums in violation of the Coal Act, the Fund is not entitled to benefit from the unlawfully held funds. At the point when the Jumacris beneficiaries were withdrawn, the defendants were required to reduce the Jumacris premiums by the amount owed by Gilbert for the current plan year and return the remainder. *See* 26 U.S.C. § 9706(f)(3)(A)(i); *supra* pp. 579–81. The remainder, to the extent not returned to the plaintiff, was held by the defendants in violation of the Coal Act.[18] The court concludes, consistent with the Fourth Circuit in *Mary Helen,* that these premiums retained in violation of the statute did not lawfully remain a part of the Combined Fund, rendering inapplicable the anti-inurement provision. *See Mary Helen,* 235 F.3d at 213. Without this provision as a bar to recovery of interest, the defendants are subject to the general rule that prejudgment interest is a basic part of a plaintiff's compensation. *See, e.g., Osterneck v. Ernst & Whitney,* 489 U.S. at 174, 109 S.Ct. 987. *See also Phillips v. Washington Legal Foundation,* 524 U.S. 156, 164–66, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (Applying Texas law and concluding that interest income generated by client's funds held in escrow is private property of client for purposes of Takings Clause).

█ An award of prejudgment interest is within the discretion of the district court. *Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717, 727 (4th Cir.2000). The court concludes, consistent with the

---

18. The premiums for the Jumacris retirees were collected lawfully, pursuant to the "pay first, dispute later" basis of the Coal Act. *See*

*Mary Helen,* 235 F.3d at 213 (citing 26 U.S.C. § 9706(f)(5)).

Fourth Circuit in *Mary Helen*, that construing the anti-inurement provision to allow the defendants to retain interest on unlawfully withheld premiums would be akin to granting the Combined Fund a long-term, interest-free loan. Such a construction would raise constitutional concerns. *Mary Helen*, 235 F.3d at 213. *See also Immigration and Naturilization Services v. St. Cyr*, 533 U.S. 289, ——, 121 S.Ct. 2271, 2279, 150 L.Ed.2d 347 (2001) ("if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.") (internal citations omitted).

Accordingly, balancing the plaintiff's interest in being made whole with the Coal Act's goals and purposes, the court concludes that the defendants are obligated to refund all interest actually earned on the premiums collected for the Jumacris retirees and retained in violation of the statute. The court finds no basis for applying a tort-based theory of recovery of interest where the plaintiff might recover more interest than actually earned by the Combined Fund, but rather, concludes that the plaintiff is entitled to recovery of interest based upon a restoration-basis theory. Following the restoration theory of recovery would, as recognized by the concurring opinion in *Mary Helen*, best serve the established doctrine that "interest follows principal" and it would be consistent with the goals of the Coal Act, preserving all properly collected premiums and the interest earned thereon while only sacrificing the unlawfully earned interest.

The court turns to the plaintiff's request for attorney fees and costs. In general, under the "American rule," litigants are responsible for their own attorney's fees. *See Alyeska Pipeline Service Co. v. Wil-*

*derness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, (4th Cir.1999). Absent a contractual or statutory provision to the contrary, a prevailing party cannot typically recover fees and expenses from a losing party. *See Thonen v. Jenkins*, 517 F.2d 3, 6 (4th Cir.1975). Inasmuch as the Coal Act contains no authorization for an award of costs or attorney fees for a litigant successful in challenging the Trustees thereunder, the court sees no reason to deviate from the settled American rule. *See id.* Accordingly, the court denies the plaintiff's motion for summary judgment insofar as it seeks an award of costs and fees.

### V. Conclusion

Accordingly, it is ORDERED that:

1. The plaintiff's motion to dismiss defendants' counterclaim filed April 7, 2000, be, and it hereby is granted.

2. The plaintiff's renewed motion to dismiss defendants' counterclaim, filed October 23, 2000, be, and it hereby is, dismissed as moot.

3. The plaintiff shall recover from defendants the amount of premiums paid by plaintiff pursuant to the SSA's assignment of Jumacris retirees, which assignment was later determined to be erroneous pursuant to 26 U.S.C. § 9706(f)(3), as of the date of the SSA's withdrawal of the Jumacris beneficiaries,[19] less any amounts assessed and applied by defendants to pay premiums for the plan year beginning on October 1, 1998, for Gilbert's remaining beneficiaries. The award shall be further reduced by any additional credits Gilbert has received on premiums due to the Combined Fund in subsequent years.

4. The plaintiff shall recover from defendants any actual interest earned, from

---

**19.** This date appears to be May 25, 1999.

and after the date of the withdrawal of the assignment of beneficiaries, on the amount of money that ought to have been refunded to Gilbert as set forth in paragraph 3 above.

5. The plaintiff's motion for summary judgment, filed April 3, 2000, and plaintiff's renewed motion for summary judgment, filed October 23, 2000, are granted only insofar as they seek an award of a refund of premiums for the assigned Jumacris retirees and prejudgment interest as set forth in paragraphs 3 and 4 above. The motions are otherwise denied.

6. The defendants' motion for summary judgment, filed November 3, 2000, be, and it hereby is, denied.

7. Unless the parties have sooner furnished the court an agreed order on the calculations of the amounts defendants owe to plaintiff pursuant to this order and specifically paragraphs 3 and 4 above, the parties are directed to appear before the court by counsel for hearing thereon at 3:00 p.m. on November 2, 2001.

The Clerk is directed to forward copies of this order to all counsel of record.